Lenora M. Lapidus (LL-6592)
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
212-519-7816
Attorney for Plaintiffs
See signature page for additional attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MEI YING LIU and
SHU FANG CHEN,

    Plaintiffs,

v.

ORIENTAL BUFFET, INC., d/b/a KING
CHEF BUFFET,
AN NA ZHENG,
XIOA YANG ZHENG,
BEN LIANG ZHU,
FRANK CHAN,
KAI TUNG CHEN, and
JIMMY CHING,

    Defendants.

**COMPLAINT AND
JURY DEMAND**

CIV 03-2406 (KSH)

### PRELIMINARY STATEMENT

1. This is an action brought on behalf of Mei Ying Liu and Shu Fang Chen, Fujianese women who worked as waitresses at King Chef, a Chinese restaurant located at 777 Hamburg Turnpike in Wayne, New Jersey. Plaintiffs were exploited to an extraordinary degree by Defendants, their employers and landlords. Plaintiffs were paid no base wage, were required

1

to give a cash payment to Defendants for the privilege of working at King Chef, were treated in a discriminatory manner based on their ethnicity and sex, were housed in substandard conditions, and were threatened by Defendants when they resigned from their employment.

2. Although Plaintiffs received tips from customers, they were not paid any base wage by their employer and were not paid overtime, in violation of the Fair Labor Standards Act and New Jersey labor laws. They were required to perform kitchen preparation and other "side work," for which they received no wages and no tips. Plaintiffs also were required to pay $15 to $18 daily to their employer as a "kickback," and a portion of their tips were diverted to Defendants, in violation of New Jersey labor laws. Because they are Fujianese women, fewer and smaller tip-paying tables were given to Plaintiffs than to male waiters from northern China. As Fujianese women, Plaintiffs were treated in a discriminatory manner by Defendants, in violation of federal and state civil rights laws. When Plaintiffs resigned from their positions, they and their families were threatened by Defendants. Additionally, Plaintiffs were housed in an employer-provided apartment in conditions that violate the public policy of the state of New Jersey.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337. In particular, this Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b), which permits employees to bring civil actions in courts of appropriate jurisdiction to recover damages for an employer's failure to pay the minimum wage and overtime wages, and 29 U.S.C. § 1981, addressing the equal rights of all persons in the United States to make and enforce contracts. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2

4. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the corporate defendant is subject to personal jurisdiction in this district.

## PARTIES

5. Plaintiff Mei Ying Liu is an adult woman of Fujianese ethnicity residing in New York, New York. Plaintiff Liu worked at King Chef from approximately May 2000 until November 11, 2001.

6. Plaintiff Shu Fang Chen is an adult woman of Fujianese ethnicity residing in Kissimmee, Florida. Plaintiff Chen worked at King Chef from approximately July 10, 2001 until November 11, 2001.

7. On information and belief, Oriental Buffet, Inc., d/b/a King Chef ("King Chef") is a corporation doing business in the State of New Jersey, with a primary location at 777 Hamburg Turnpike in Wayne, New Jersey.

8. On information and belief, An Na Zheng, Xiao Yang Zheng, Ben Liang Zhu, Frank Chan, and Kai Tung Chan, each with the business address of 777 Hamburg Turnpike in Wayne, New Jersey, are the managers, shareholders, and owners of King Chef and had knowledge of, committed, and permitted the actions, practices, and policies complained of herein. Defendant Frank Chan resides at 3 Graypebble Circle in Silerville, New Jersey.

9. On information and belief, Jimmy Ching, with a business address of 777 Hamburg Turnpike in Wayne, New Jersey, was the head waiter of King Chef and had knowledge of and commited the actions, practices, and policies complained of herein.

3

## STATEMENT OF FACTS

10. Plaintiffs are from Fuchow, a region within the Fujian province on the southeastern coast of China. They speak Fuchow, a distinct dialect of the Fujian language. While Plaintiffs communicate primarily in Fuchow, they are also able to communicate in Mandarin.

11. Plaintiffs worked as waitresses at King Chef. They served customers at tables, performed kitchen preparation work, such as making dumplings and preparing vegetables, and also performed "side work," such as wiping the buffet, polishing brass fixtures, and filling salt and pepper shakers, among other duties.

12. While employed at King Chef, Plaintiffs did not receive any wages from Defendants. Their only income was gratuities from customers.

13. In addition to not paying a base wage as required by law, Defendants did not inform Plaintiffs that their wages were reduced in accordance with the federal statutory provision applicable to tipped employees.

14. Beginning in September 2000, Plaintiff Liu received a check for each week that she worked at King Chef. In exchange for the checks, however, Plaintiff Liu paid in cash an equal amount to Defendant An Na Zheng. That is, when Defendant An Na Zheng gave Plaintiff Liu a check for $13.80, Plaintiff Liu paid $13.80 in cash to Defendant An Na Zheng.

15. Until about October 25, 2001, Plaintiffs each worked six days per week. They worked on Fridays, Saturdays, and four additional days during the week. After about October 25, 2001, they worked for a total of five days per week—Fridays, Saturdays, and three additional week days.

16. Until about October 25, 2001, Plaintiffs worked approximately 80 hours per week. After about October 25, 2001, Plaintiffs worked about 65 hours per week.

17. On weekdays, Plaintiffs worked from about 10 a.m. until about 11 p.m. On weekends, they worked from about 10 a.m. until about 11:30 p.m. About every second weekend, Plaintiffs were required to work at King Chef until approximately 1:30 a.m. for one night, polishing brass fixtures.

18. Plaintiffs ate all their meals at King Chef, but were given only a few minutes to eat their meals.

19. Plaintiffs usually did not eat breakfast. If they had time to eat breakfast, they ate while standing and continued to work.

20. Plaintiffs had about 10 to 20 minutes to eat lunch, and about 10 minutes to eat dinner. Defendants often rushed Plaintiffs through these meals and pressured them to perform side work instead of taking time to eat.

21. During their meals, Plaintiffs were required to attend to any customers that were seated at their tables.

22. Plaintiffs were required to give a cash payment ("kickback") to their employer each day they worked at King Chef.

23. From May 2000 until approximately March 2001, Plaintiff Liu paid an $18 daily kickback directly to Defendant An Na Zheng. Beginning in approximately March 2001, the amount of the daily kickback was reduced to $15. Plaintiff Liu then gave the $15 daily kickback to the head waiter, Defendant Ching.

24. Plaintiff Liu was sometimes required to pay a higher daily kickback. If a co-worker did not come to work, the other employees were required to make up for the co-worker's kickback by splitting the amount between them.

25. Plaintiff Chen was required to pay a $15 daily kickback to Defendant Ching.

26. Defendants diverted tips due to Plaintiffs for the use of Defendants.

5

27. Defendant An Na Zheng sometimes required Plaintiffs to pay for customers' bills, even if the customers had already paid. Plaintiffs were required to pay customers' bills when a customer paid at the cashier directly, not at the table where he or she dined, and when the customer left with the check after paying. The customers' bills were deducted from Plaintiffs' tips.

28. When customers wrote a tip amount on a credit card receipt, Defendant An Na Zheng gave the Plaintiffs a lower amount than what had been indicated as a tip on the credit card receipt. Defendant An Na Zheng also withheld tips from some credit card receipts altogether.

29. Plaintiff Liu was fined for minor mistakes she was accused of making. Fines were deducted from Plaintiff Liu's tips.

30. Defendants hindered a wage and hour investigation of King Chef that was conducted by the New Jersey Department of Labor (DOL).

31. During one of the DOL visits to King Chef, in approximately late October 2001, Plaintiff Liu and other employees spoke with the DOL investigator. Plaintiff Liu was instructed by Defendants what to say to the investigator, and Defendant An Na Zheng listened to the conversation.

32. Plaintiff Liu believed that if she told the inspector information other than what Defendant An Na Zheng instructed her to say, Defendants would terminate her employment.

33. After the October 2001 DOL investigation, Defendants told Plaintiffs and other employees that they would receive a salary of $3 per hour. Plaintiffs, however, did not receive wages from Defendants.

34. Instead of being paid wages as required by law, after the October 2001 DOL investigation, Plaintiffs were told that they owed money to the Defendants for back rent, meals, utilities, and other expenses.

35. This was the first time Plaintiffs had heard about these expenses. They were not informed of any deductions in advance, and they never agreed to such deductions.

36. After the October 2001 DOL investigation, a time-card system was instituted at King Chef. Defendants either filled in hours on the time cards, or instructed Plaintiffs what hours to write on the time cards. Plaintiffs and other employees worked more hours than what was reflected on the time cards.

37. After the October 2001 DOL investigation, a three-hour afternoon "break" was instituted. However, Plaintiffs and other employees stayed at the restaurant during this break and continued working.

38. Although Plaintiffs were not required to stay at the restaurant during the "break," Plaintiffs had no means of transportation, were unfamiliar with the surrounding area, and were told to perform side work.

39. Plaintiffs were not given tip-paying tables to wait on during the "break" and were not paid a wage, even though they performed side work, such as filling salt shakers and polishing the brass buffet, during this time.

40. After the October 2001 DOL investigation, Plaintiffs' schedules were reduced from six days per week to five days per week.

41. Plaintiffs, Fujianese women, suffered unequal terms and conditions of employment, as compared to northern Chinese male employees, because of their ethnicity and sex.

42. All the female employees at King Chef were from Fujian, a province in the south of China, while all but one of the male employees were from the north of China. The primary language spoken by Plaintiffs is a dialect of Fujian, while the primary language of the male employees from northern China is Mandarin.

43. Male waiters from the north of China received more tables, larger tables, and tables with better-tipping customers than Plaintiffs and other Fujianese female waitresses.

44. If a customer specifically asked to be seated at a table in one of the Plaintiffs' sections, Defendants refused to seat the customer in the waitress's section if it was a customer who tipped well. Defendant Ching and other northern Chinese male waiters were given these tables.

45. During the "break," only Defendant Ching and other northern Chinese male waiters were given tables to wait on—and the tips associated with the tables—while Plaintiffs and other Fujianese women were required to perform side work, for which they received no compensation.

46. Due to the discriminatory seating policy, Plaintiffs earned less in tips—the only income for all King Chef wait staff—than did the male waiters from northern China.

47. Defendant An Na Zheng verbally abused Plaintiffs and other Fujianese women employees. She frequently yelled, "You're not educated!" and, "You're so dumb and stupid!" at Plaintiffs.

48. Defendant An Na Zheng criticized the English capabilities of the Fujianese women, but not of the men from northern China, even though their capabilities were equivalent.

49. The work of Fujianese women was scrutinized more closely than the work of northern Chinese men. Plaintiffs were verbally abused for the quality of their work. Male waiters from northern China, whose quality of work was similar to that of the Plaintiffs, were not verbally abused.

50. Plaintiffs lived in housing that was maintained by Defendants, the conditions of which violate the public policy of New Jersey.

51. The King Chef apartment housed approximately seven women in one bedroom, three men in a second bedroom, and four to six people in a combined kitchen/living room area.

52. The King Chef apartment was overcrowded and dirty. It was infested with vermin, including cockroaches, and was occasionally without electricity or running water.

53. While Plaintiffs were not required to stay in the King Chef apartment, their permanent homes were located in New York City. The Defendant-provided housing had been offered to Plaintiffs as an incentive to work at King Chef, which was located far from their homes in New York.

54. Plaintiffs and other King Chef employees were picked up at the King Chef apartment each morning and driven back to the King Chef apartment each night.

55. Defendants threatened Plaintiffs and their families when Plaintiffs resigned from their positions at King Chef.

56. Plaintiffs experienced much pressure as waitresses at King Chef. The combination of not receiving wages for their work, having their tips diverted, being required to pay for customers' bills, and suffering discriminatory and verbally abusive treatment made the working conditions unbearable. Plaintiffs felt that they had to leave King Chef.

57. Plaintiffs Liu and Chen resigned at the same time. When they resigned, Defendant An Na Zheng warned the Plaintiffs that they should consider the consequences of any action they may take because they have families and children. Defendant Xioa Yang Zheng stood by as Defendant An Na Zheng made this threat.

58. Plaintiffs took this threat seriously, because they had reason to believe that Defendants had hired individuals to threaten and intimidate other former King Chef employees who had filed a civil action for labor law and other violations in this Court, titled <u>Wu v. Oriental Buffet,</u>

9

Inc., Civil Action No. 00-4482 (KSH). In addition, Plainitiff Liu overheard Defendant An Na Zheng say that a life in Chinatown was worth $10,000 to $20,000.

59. After they stopped working at the restaurant, Plaintiffs received checks that were backdated for dates when Plaintiffs Liu and Chen had worked at the restaurant. The checks range in amount from $26.07 to $40.29. No explanation accompanied the checks.

## FIRST CLAIM FOR RELIEF

## FAIR LABOR STANDARDS ACT

60. The allegations in paragraphs 1 through 59 are repeated as if fully stated herein.

61. Defendants willfully refused to pay Plaintiffs the applicable minimum hourly wage in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 206(a)(1), 203(m).

62. Defendants willfully refused to pay Plaintiffs overtime compensation at rates not less than one and one-half times the regularly paid wages or minimum rate of pay for each hour worked in excess of forty hours per workweek, in violation of 29 U.S.C. § 207(a)(2).

63. Defendants' willful violations of the Fair Labor Standards Act entitle Plaintiffs to recovery for their unpaid minimum wages, unpaid overtime compensation, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs of the action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

## NEW JERSEY WAGE AND HOUR LAW

64. The allegations in paragraphs 1 through 63 are repeated as if fully stated herein.

65. Defendants intentionally refused to pay Plaintiffs the required minimum wage, in violation of N.J.S.A. § 34:11-56a4.

66. Defendants intentionally refused to pay Plaintiffs proper overtime wages at one and one-half times the regularly paid wages or minimum wage and failed to keep proper wage and hour records, in violation of N.J.S.A. § 34:11-56a4.

67. Defendants' willful violations of the New Jersey Wage and Hour Law entitle Plaintiffs to recover their unpaid minimum wages, unpaid overtime compensation, and reasonable attorneys' fees and costs of the action, pursuant to N.J.S.A. § 34:11-56a25.

## THIRD CLAIM FOR RELIEF

## EQUAL PAY ACT

68. The allegations in paragraphs 1 through 67 are repeated as if fully stated herein.

69. The Defendants willfully discriminated against Plaintiffs by giving them fewer and smaller tip-paying tables than male employees, thereby ensuring that Plaintiffs received significantly lower wages than male employees, in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1).

70. Defendants' willful violation of the Equal Pay Act entitles Plaintiffs to recovery of the differential in tips as compared to the male employees, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs of the action, pursuant to 29 U.S.C. § 216(b).

## FOURTH CLAIM FOR RELIEF

## NEW JERSEY EQUAL PAY ACT

71. The allegations in paragraphs 1 through 70 are repeated as if fully stated herein.

72. The Defendants willfully discriminated against Plaintiffs by giving them fewer and smaller tip-paying tables than male employees, thereby ensuring that Plaintiffs received significantly

11

lower wages than male employees, in violation of the New Jersey Equal Pay Act, N.J.S.A. § 34:11-56.2.

73. Defendants' willful violation of the New Jersey Equal Pay Act entitles Plaintiffs to recovery of the differential in tips as compared to the male employees, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action, pursuant to N.J.S.A. § 34:11-56.8.

## FIFTH CLAIM FOR RELIEF

## NEW JERSEY LABOR LAW

74. The allegations in paragraphs 1 through 73 are repeated as if fully stated herein.

75. Defendants willfully diverted tips that were due to Plaintiffs for the use of Defendants, in violation of N.J.S.A. § 34:11-4.14(a).

76. Defendants willfully withheld and diverted Plaintiffs' wages, in violation of N.J.S.A. § 34:11-4.4.

77. Defendants' willful violations of the New Jersey prohibitions against diversion and withholding of wages and tips entitle Plaintiffs to the wages and tips that were diverted to and withheld by Defendants, pursuant to N.J.S.A. § 34:11-4.14(b).

## SIXTH CLAIM FOR RELIEF

## CIVIL RIGHTS

78. The allegations in paragraphs 1 through 77 are repeated as if fully stated herein.

79. Defendants willfully denied Plaintiffs, of Fujianese origin, the same right to make and enforce contracts as enjoyed by employees from the north of China, in violation of 42 U.S.C. § 1981.

80. Defendants' violation of Plaintiffs' equal rights to make and enforce contracts entitles Plaintiffs to compensatory damages, punitive damages, attorneys' fees and costs, and any other equitable relief this Court deems appropriate.

## SEVENTH CLAIM FOR RELIEF

## NEW JERSEY LAW AGAINST DISCRIMINATION

81. The allegations in paragraphs 1 through 80 are repeated as if fully stated herein.

82. Defendants intentionally discriminated against Plaintiffs because of their national origin and because of their sex, in violation of N.J.S.A. § 10:5-12.

83. Defendants' willful violation of Plaintiffs' civil rights entitles Plaintiffs to compensatory damages, punitive damages, attorneys' fees and costs, and any other equitable relief this Court deems appropriate, pursuant to N.J.S.A. §§ 10:5-13, 10:5-27.1.

## EIGHTH CLAIM FOR RELIEF

## REPRISALS: NEW JERSEY LAW AGAINST DISCRIMINATION

84. The allegations in paragraphs 1 through 83 are repeated as if fully stated herein.

85. Defendants' threats against Plaintiffs and their families when Plaintiffs resigned from their employment at King Chef constitute reprisals prohibited by the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(d).

86. Defendants' reprisals against Plaintiffs and their families entitle Plaintiffs to compensatory damages, punitive damages, attorneys' fees and costs, and any other equitable relief this Court deems appropriate, pursuant to N.J.S.A. §§ 10:5-13, 10:5-27.1.

## NINTH CLAIM FOR RELIEF

## NEW JERSEY PUBLIC POLICY

87. The allegations in paragraphs 1 through 86 are repeated as if fully stated herein.

88. Defendants housed Plaintiffs in company housing that was primarily for the benefit of the Defendants, the conditions of which violate New Jersey public policy, pursuant to N.J.S.A. §§ 34:9A et seq., 2A:42 et seq.; N.J.A.C. § 12:56-8.6; 29 U.S.C. § 1823.

89. Defendants' housing of Plaintiffs in conditions that violate the public policy of New Jersey entitles Plaintiffs to declaratory relief and other equitable relief this Court deems appropriate.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

a. Declare that Defendants have violated federal and state minimum wage and overtime laws by not paying Plaintiffs a base wage or overtime pay during their employment at King Chef;

b. Declare that Defendants violated the New Jersey and federal Equal Pay Acts by steering fewer and smaller tip-paying tables to Plaintiffs, because of their sex;

c. Declare that Defendants violated New Jersey state prohibitions against diverting and withholding wages and tips of the Plaintiffs;

d. Declare that Defendants violated Plaintiffs' civil rights under federal and state law by treating Plaintiffs differently from male and non-Fujianese employees based on their national origin and sex;

e. Declare that Defendants violated Plaintiffs' civil rights under New Jersey law by threatening Plaintiffs and their families;

f. Declare that Defendants violated the public policy of New Jersey by housing Plaintiffs in a substandard apartment;

g. Award compensatory damages to Plaintiffs in an amount to be determined at trial;

h. Award punitive damages to Plaintiffs in an amount to be determined at trial;

i. Order Defendants to pay reasonable attorneys' fees and costs; and

j. Grant such other and further relief as this Court deems just and proper under the circumstances.

Date: May 22, 2003

Respectfully submitted,

*Lenora M. Lapidus*

Lenora M. Lapidus (LL-6592)
Jennifer Arnett Lee
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

Edward M. Barocas (EB-8251)
American Civil Liberties Union of
New Jersey Foundation
35 Halsey Street, Suite 4B
Newark, NJ 07102
Tel: 973-642-2084
Fax: 973-642-6523

Alix R. Rubin (ARR-6732)
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068-1791
Tel: 973-597-2492
Fax: 973-597-2493
      On behalf of the ACLU-NJ

**ATTORNEYS FOR PLAINTIFFS**

15

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues.

Date: *May 22, 2003*          *Lenora M. Lapidus*

Lenora M. Lapidus (LL-6592)
Jennifer Arnett Lee
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

Edward M. Barocas (EB-8251)
American Civil Liberties Union of
New Jersey Foundation
35 Halsey Street, Suite 4B
Newark, NJ 07102
Tel: 973-642-2084
Fax: 973-642-6523

Alix R. Rubin (ARR-6732)
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068-1791
Tel: 973-597-2492
Fax: 973-597-2493
           On behalf of the ACLU-NJ

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATION UNDER LOCAL CIVIL RULE 10.1

Counsel for Plaintiffs do not include the street addresses of Mei Ying Liu and Chen Shu Fang in the complaint due to the threats that Plaintiffs received upon their resignations from King Chef, as detailed herein. Defendants hired individuals to threaten and intimidate other former King Chef employees who filed a civil action against King Chef and related defendants. Because Plaintiffs fear that Defendants will undertake similar measures against them and their families, Plaintiffs' street addresses are not included in herein.

Date: *May 22, 2003*

*/s/ Lenora M. Lapidus/*

Lenora M. Lapidus (LL-6592)
Jennifer Arnett Lee
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

Edward M. Barocas (EB-8251)
American Civil Liberties Union of
New Jersey Foundation
35 Halsey Street, Suite 4B
Newark, NJ 07102
Tel: 973-642-2084
Fax: 973-642-6523

Alix R. Rubin (ARR-6732)
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068-1791
Tel: 973-597-2492
Fax: 973-597-2493
   On behalf of the ACLU-NJ

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

This matter is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding. However, a closely related matter is currently pending in the United States District Court for the District of New Jersey before the Honorable Katharine S. Hayden, U.S.D.J.: Wu v. Oriental Buffet, Inc., 00-4482 (KSH).

Date: *May 22, 2003*

*[signature: Lenora M. Lapidus]*

Lenora M. Lapidus (LL-6592)
Jennifer Arnett Lee
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

Edward M. Barocas (EB-8251)
American Civil Liberties Union of
New Jersey Foundation
35 Halsey Street, Suite 4B
Newark, NJ 07102
Tel: 973-642-2084
Fax: 973-642-6523

Alix R. Rubin (ARR-6732)
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068-1791
Tel: 973-597-2492
Fax: 973-597-2493
    On behalf of the ACLU-NJ

**ATTORNEYS FOR PLAINTIFFS**