# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MEI YING LIU and SHU FANG CHEN,

    Plaintiffs,

v.

ORIENTAL BUFFET, INC., d/b/a KING CHEF
BUFFET; METROPOLITAN BUFFET
CORPORATION, d/b/a METROPOLITAN BUFFET;
AN NA ZHENG; XIAO YANG ZHENG; BEN LIANG
ZHU; FRANK CHAN, a/k/a KAI TUNG CHEN, a/k/a
KAI TONG CHEN, a/k/a KAI CHIANG CHAN, a/k/a
KAI CHEUNG CHAN, a/k/a KAI CHEONG CHAN;
and DE GI CHING, a/k/a TEH QI CHING, a/k/a JIMMY
CHING,

    Defendants.

Civil Action No. 03-3406 (KSH)

Honorable Katharine S. Hayden,
U.S.D.J.

---

## MEMORANDUM OF LAW IN SUPPORT OF APPEAL

---

George E. Patterson, Jr. (GP-4783)
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ 07068-1791
Tel: 973-597-2492
Fax: 973-597-2493
On behalf of the ACLU-NJ

Edward M. Barocas (EB-8251)
American Civil Liberties Union of
New Jersey Foundation
P.O. Box 750
Newark, NJ 07102
Tel: 973-642-2086
Fax: 973-642-6523

Lenora M. Lapidus (LL-6592)
Claudia M. Flores (CF-4932)
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

Of Counsel:
Edward M. Barocas (EB-8251)

On the brief:
Lenora M. Lapidus (LL-6592)
Jennifer Arnett Lee
Alix R. Rubin (ARR-6732)

**Attorneys for Plaintiffs**
    **Mei Ying Liu and Shu Fang Chen**

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 4

JURISDICTION ................................................................................................ 12

STANDARD OF REVIEW ............................................................................... 12

LEGAL ARGUMENT ...................................................................................... 13

I.    IT IS MANIFESTLY UNJUST TO REQUIRE PLAINTIFFS TO
      IDENTIFY THEIR CURRENT EMPLOYERS AND PROVIDE THEIR
      PERSONNEL FILES WHEN THE INFORMATION SOUGHT IS NOT
      RELEVANT TO THE CLAIMS AND DEFENSES IN THIS LAWSUIT
      AND PROVIDING THE INFORMATION THREATENS TO IMPOSE
      AND EXTREMELY HEAVY BURDEN ON PLAINTIFFS ........................... 13

      A.    It Is Appropriate to Limit Discovery to Protect Parties from Unduly
            Burdensom Requests ................................................................................ 14

      B.    Where Information Concerning a Party's Current Employer Has
            Limited Probative Value, courts Have Protected that Information
            from Discovery. ...................................................................................... 15

      C.    Defendants Have Not Established that Plaintiffs' Current
            Employment Information is Reasonably Calculated to Lead to the
            Discovery of Admissible Evidence Relevant to Any Claim or
            Defense in this Action. ........................................................................... 20

            1.    Plaintiffs' Current Employment Information Is Not Relevant
                  to Calculation of Their Damages Because Plaintiffs Do Not
                  Seek Front Or Back Pay and Stipulate that Their Current
                  Employment Has Not Been Affected by Emotional Distress. ......... 21

            2.    Information Concerning Plaintiffs Current Employers Is Not
                  Relevant Because Plaintiffs Have Previously Certified They
                  Have Not Brought Similar Claims Against Subsequent
                  Employers. .................................................................................... 22

   3.  Discovery Concerning Plaintiffs' Current Job Performance is
     not Reasonably Calculated to Lead to Admissible Evidence
     Relevant to Their Job Performance at King Chef ....................................23

II.  PLAINTIFFS' FEAR OF TERMINATION IS NEWLY DISCOVERED
   EVIDENCE THAT WARRANTS RECONSIDERATION. .............................................26

CONCLUSION.........................................................................................................................28

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

Ansell v. Green Acres Contr. Co., 347 F.3d 515 (3d Cir. 2003) ....................................25

Consolidated Rail Corp. v. United States, 812 F.2d 1444 (3d Cir. 1987) ....................................25

Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119 (D.N.J. 1998)..................................13

Doe v. Handman, 1999 U.S. Dist. LEXIS 17856 (S.D.N.Y. 1999)............................16, 19, 20, 22

Graham v. Casey's Gen. Stores, Inc., 206 F.R.D. 251 (S.D. Ind. 2002)................15, 17, 18, 23, 25

Haines v. Liggett Group, Inc., 975 F.2d 81 (3d. Cir. 1992)....................................12, 13

In re Surety Ass'n of America 388 F.2d 412 (2d Cir. 1967)..........................................14

Koch Materials Co. v. Shore Slurry Seal, Inc., 216 F.R.D. 301 (D.N.J. 2003) ............................13

Lo Bosco v. Kure Eng'g, 891 F. Supp. 1035 (D.N.J. 1995)..........................................13

Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221 (3d Cir. 1993) ..............................................26

McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995) ..........................................21

Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990).........................................15

Musicom INt'l. Inc. v. Serubo, 1994 WL 590619 (E.D. Pa. 1996) ...............................................15

Myrin v. Federal Ins. Co., No. 95-7903, 1996 WL 355347 (E.D. Pa. Oct. 27 1994)....................15

North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194 (3d Cir. 1995)...........................13

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978) ..........................................................14

Premer v. Corestaff Servs., L.P., 232 F.R.D. 692 (M.D. Fla. 2005)................................15, 23, 25

Perry v. Best Lock Corp., No. IP 98-C-0936-H/G, 1999 WL 33494858 (S.D. Ind. Jan. 21, 1999) ..............................................................................16, 18, 19, 23, 24, 25

P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349 (D.N.J. 2001) .......13, 28

Richmond v. UPS  Serv. Parts Logistics, No. IP01-1412-C-K/H, 2002 WL 745588 (S.D. Ind. Apr. 25, 2002)...........................................................................................................16

<u>Surles v. Air France</u>, 2001 U.S. Dist. LEXIS 15315 (S.D.N.Y. 2001)...........................................15

<u>Topo v. Dhir</u>, 210 F.R.D. 76 (S.D.N.Y. 2002) ........................................................................14

<u>Williams v. Bd. of County Comm'rs</u>, 192 F.R.D. 698 (D. Kan. 2000) ........................................17

## RULES

Fed. R. Civ. Pro. 26 ...........................................................................................................14

Fed. R. Evid. 401 ...............................................................................................................24

Fed. R. Evid. 403 ...............................................................................................................24

## PRELIMINARY STATEMENT

Plaintiffs Mei Ying Liu and Shu Fang Chen ("Plaintiffs") submit this brief in support of their appeal of United States Magistrate Judge Patty Shwartz's March 7, 2006, Order on Informal Application (the "March 7 Order") requiring Plaintiffs to produce certain information concerning their current employers. The Magistrate Judge incorrectly held that the identity of Plaintiffs' current employers and information contained in Plaintiffs' personnel files constitutes relevant discoverable information.

The Magistrate Judge, aware that Plaintiffs fear termination should their current employers learn of their involvement with this lawsuit, enjoined Defendants' from subpoenaing or otherwise contacting Plaintiffs' current employers at the present time. Instead, she ordered Plaintiffs to certify to the identity of their current employers, their job titles, their compensation, and whether or not they currently work overtime. However, the Magistrate Judge further ordered Plaintiffs to obtain copies of their personnel files from their current employers and provide them to Defendants Oriental Buffet, d/b/a King Chef Buffet, An Na Zheng, Xiao Yang Zheng, Ben Liang Zhu, Frank Chan, Kai Tung Chan, and Metropolitan Buffet Corporation (collectively "Defendants"), and suggested that should Plaintiffs fail to obtain this information and share it with Defendants, Defendants would be permitted to subpoena the information.

Plaintiff Shu Fang Chen ("Chen"), a low-skilled, low-wage worker with little bargaining power or job security in her workplace, does not believe she can request and obtain copies of personnel files or other records from her current employer without alerting her employer to her involvement in this lawsuit and thus jeopardizing her job. She also fears harassment at the hands of Defendants at her place of employment should her current employer become known to them. She thus appeals the Magistrate Judge's Order. Plaintiff Mei Ying Liu ("Liu") has provided a certification in partial compliance with the Magistrate Judge's Order and provides herewith a second certification stating that she has inquired as to whether her employer keeps records concerning his employees and has been advised that he keeps no such records. See Certification of Mei Ying Liu dated March 21, 2006 attached hereto as Exhibit "M". Plaintiffs believe that Liu has thus fully complied with the Magistrate Judge's order, but Liu joins in this appeal in an abundance of caution to prevent Defendants from subpoenaing or otherwise contacting her employer in the future.

Plaintiffs bring this appeal to prevent a manifest injustice. The Magistrate Judge's Order forces Plaintiffs to choose between two equally detrimental outcomes. Plaintiffs must either risk losing their jobs or abandon their efforts to protect rights guaranteed them under the laws of the United States and the State of New Jersey. Were the information sought by Defendants particularly

relevant to their defenses, the heavy burden placed on Plaintiffs *might* be justifiable, but the information sought here is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs do not seek back pay or front pay in this action; information regarding their current employment is thus irrelevant to the measure of these damages. Plaintiffs have not alleged that the emotional distress they suffered at the hands of Defendants rendered them unable to work and are further willing to stipulate that this distress has not affected them in their current employment; information regarding their current employment is thus irrelevant to calculation of their emotional distress. Plaintiffs have certified that they have brought no suits, grievances, or complaints against their current employers, and Defendants have put no evidence suggesting otherwise. Finally, Plaintiffs' current job performance is not probative to the quality of their job performance while in Defendants' employ. For all these reasons, the information sought is irrelevant to the current action.

Plaintiffs do not seek extraordinary relief. Both have already supplied the bulk of the information called for in the March 7 Order and seek only partial relief from its obligations. Specifically, Chen seeks to protect the identity of her current employer and relief from the obligation to obtain a copy of her personnel file or other employment records. Liu seeks only to ensure that Defendants may not subpoena or otherwise contact her employer in an attempt to gain access to the

records she has been informed do not exist.   This relief is reasonable and appropriate, as the information Defendants seek is not relevant to any claim or defense in this matter.

## STATEMENT OF FACTS

Plaintiffs filed this action for, inter alia, violations of their right to be paid a minimum wage and overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., violations of their right to be free from discrimination on the basis of their gender under the Equal Pay Act, 29 U.S.C. § 206(d), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5 et seq., and for violations of their equal right to make and enforce contracts under the Civil Rights Act, 29 U.S.C. § 1981.  Plaintiff Liu worked as a waitress for Oriental Buffet Inc., d/b/a King Chef Buffet, ("King Chef") from May 26, 2000, through November 11, 2001. Plaintiff Chen worked as a waitress for King Chef from July 10, 2001, through November 11, 2001.  Aside from gratuities earned from customers, neither Liu nor Chen were compensated for the services each provided to King Chef.   Further, Plaintiffs endured discrimination due to their gender and their Fujianese ethnic origin.  Male waiters not of Fujianese descent were consistently assigned to larger tables that generated bigger tips than those to which Plaintiffs were assigned. Because of Defendants' discrimination and failure to pay wages, Plaintiffs left Defendants' employ on November 11, 2001.   Neither Plaintiff, however, seeks

damages for wages lost in the period between her employment with King Chef and her subsequent employment; in other words, back pay and front pay are not at issue in this lawsuit. Instead, Plaintiffs seek recovery of unpaid wages for the period of their employment with King Chef, punitive and liquidated damages related to those unpaid wages, and emotional distress compensation and punitive damages for the discrimination they endured.

Metropolitan Buffet and the OBI Defendants have sought information regarding Plaintiffs' current employers through their discovery requests in this matter. Plaintiffs initially objected to the production of information regarding their subsequent employers on the grounds that the request was designed to harass Plaintiffs. <u>See</u> Excerpts from Plaintiff Mei Ying Liu and Shu Fang Chen's Responses and Objections to Defendants' Interrogatories, attached hereto as Exhibit "D". On February 7, 2006, Plaintiffs and Defendant Metropolitan Buffet, and Plaintiffs and the OBI Defendants, submitted two joint letters to Magistrate Judge Shwartz setting forth several discovery disputes, including the ones at issue here. <u>See</u> Exhibits "E" and "F". Metropolitan indicated that it wanted information about Plaintiffs' subsequent employers (including their current employers) to determine if "plaintiffs have made other similar claims or have spoken to anyone about the allegations in this case," to determine "whether plaintiffs are alleging that they were too emotionally distraught to find other employment," and to "discover

whether [Plaintiffs] have provided the necessary I-9 documentation to establish eligibility to work in this country." <u>See</u> Exhibit "E". Metropolitan also indicated that the information was relevant should Plaintiffs seek to recover "back pay or front pay." <u>Id.</u> In a joint letter between Plaintiffs and the OBI Defendants, the OBI Defendants joined in Metropolitan's position without setting forth specific need for the information sought. <u>See</u> Exhibit "F". Plaintiffs believe that the request for this information was in fact nothing more than an attempt to uncover Plaintiffs' current immigration status and to intimidate them into dropping their claims.

At a telephonic hearing before Judge Shwartz, on February 16, 2006, the OBI Defendants, asserted a wholly new rationale for why subsequent employment information was discoverable. Specifically, the OBI Defendants stated that the information was relevant to Plaintiffs' credibility and work habits, speculating that it might show that "they weren't good workers" and thus demonstrate a non-discriminatory justification for their treatment at King Chef. <u>See</u> Transcript of February 16, 2006, hearing at 33:19, attached hereto as Exhibit "G". Judge Shwartz ordered Plaintiffs to disclose the identity of their employers subsequent to their employment at King Chef and allowed Defendants the opportunity to subpoena those employers, but enjoined Defendants from seeking

tax or immigration information.  <u>See</u> Transcript of February 16, 2006 hearing at 33:19, 34:2-12, attached hereto as Exhibit "G".

After learning of the Magistrate Judge's February 17 Order, Plaintiffs explained to their counsel, for the first time, that, in addition to their fears that disclosing the identity of their current employers would implicate issues regarding their immigration status, they were acutely afraid their current employers would fire them if they learned of Plaintiffs' involvement with a lawsuit against a former employer.  Nevertheless, Plaintiffs substantially complied with the February 17 Order by disclosing their subsequent employment history, and certain details concerning their current employers.  <u>See</u>  Exhibits "H", "I", and "J".  Thus, aside from those matters raised in this appeal, Plaintiffs have fully complied with the February 17 Order.  Based on Plaintiffs' fears, and to prevent a manifest injustice, Plaintiffs also immediately sent a brief letter requesting permission from Judge Shwartz to move for partial reconsideration of the February 17 Order.  <u>See</u> Request for Permission to Move, attached hereto as Exhibit "A".  Judge Shwartz deemed the Request for Permission to Move itself a motion for reconsideration and gave Defendants two days to respond.  <u>See</u>  March 3, 2006, letter from Donna du Beth Gardiner to Magistrate Judge Shwartz, attached hereto as Exhibit "B", and March 3, 2006 letter, from Steve Mannion to Magistrate Judge Shwartz, attached hereto as Exhibit "C".

After reviewing the parties' submissions, on March 7, 2006, Judge Shwartz denied Plaintiffs' Motion for Reconsideration, but modified her original order "to allow the plaintiffs to obtain the information identified in the February 16 (sic), 2006 Order that the defendants would seek from the plaintiffs' current employers" in lieu of Defendants serving a subpoena for the information.   See March 7 Order at 4.  The Magistrate Judge reasoned that in this way, "the plaintiffs can control the information that their current employers receive about this litigation at this time while ensuring that the defendants obtain relevant information to use at plaintiffs' depositions."  Id. at 4, fn. 2.  According to the Magistrate Judge, who acknowledged that the absence of claims of back pay or front pay made current employer information irrelevant for the purposes of determining damages and mitigation, id., this information was nevertheless relevant because it "will enable the defendants to probe plaintiffs' claim of emotional distress."  Id.

Judge Shwartz further ordered:

> that, no later than **March 10, 2006**, the plaintiffs shall provide a certification (for attorney's eyes only) that identifies the name of their current employer, their job title and a description of their duties, when they commenced employment, their salary, and whether or not they work overtime. The defendants shall not make inquiries of these specific employers unless the plaintiffs refuse to obtain the information referenced above or the defendants obtain a court-order allowing them to contact these employers[.]

Id. at 4.

Plaintiffs believe that even with these modifications, the March 7 Order exposes them to a substantial risk of termination and on-the-job harassment. On February 15, 2006, Liu learned that one of her co-workers had recently been terminated simply because he asked their employer to assist him with an application for public assistance.  Liu believes that her co-worker was fired because her employer did not want the burden of providing documentation related to her co-worker's employment and salary to the State.  When Liu learned about her co-worker's termination, this significantly deepened her previous concern that her job would likely be in jeopardy should her employer learn of her involvement in this matter or be contacted by Defendants.  While Liu has certified that her employer has informed her that he does not keep employment records for his employees, she is concerned that her Certification will not be deemed to be satisfactory compliance with the Court's order and that Defendants will as a result be permitted to subpoena the documents or otherwise contact her employer.  See Certification of Mei Ying Liu dated March 21, 2006 attached hereto as Exhibit "M".  She strongly believes that were Defendants to do so she would be very likely to lose her job.  Id.

Similarly, Chen is acutely afraid that the March 7 Order places her job in jeopardy.  Chen and her husband both work for the same employer; she fears that both may lose their jobs should the employer learn of her involvement in this

lawsuit.  Moreover, while she understands that the March 7 Order indicated that

her certification as to the identity of her employer would be for attorneys' eyes

only and would not be immediately shared with Defendants, she also understands

that it is impossible to guarantee that this information would not be shared with

Defendants at some point during this litigation.  Indeed, the March 7 Order places

no  limitation  on  sharing  any  employment  records  or  personnel  files  with

Defendants and leaves open the possibility that Defendants will be permitted to

make contact with her employer at some point in the future.  Based on her prior

experiences with Defendants, including the threats they have made against her in

the  past  and  the  harassment  that  she  understands  her  former  co-workers

experienced when they sued Defendants in a separate case, Chen believes that

revealing the identity of her current employer will result in one or more Defendants

harassing her, her co-workers, and her current employer, ultimately jeopardizing

her job.  See Certification of Shu Fang Chen dated March 20, 2006, attached hereto

as Exhibit N.

   As set out in greater detail below, the Magistrate Judge erred in

concluding that the discovery sought regarding Plaintiffs' current employment is

reasonably calculated to lead to the discovery of admissible evidence.  Nor does

the  Magistrate  Judge's  modification  of  her  initial  order  adequately  protect

Plaintiffs  from  the  heavy  burden  of  possible  termination,  intimidation,  and

harassment as the result of involving their current employers in this case. Nevertheless, Plaintiffs have already complied with the March 7 Order to the degree possible without exposing themselves to this burden: each Plaintiff has provided the Defendants with a list, to the best of their recollection, of employers subsequent to their employment at King Chef other than their current employers. In addition, Liu has provided her current employer's name; her job title and duties; the dates of her employment; her salary; and her certification that she does not work overtime. See Certification of Mei Ying Liu dated March 10, 2006 attached hereto as Exhibit "H". She has also asked whether her employer keeps records concerning his employees and was advised that he does not keep such records. See Exhibit M. Chen has provided her job title and duties; the dates of her employment; her salary; and her certification that she does not work overtime. See Certification of Shu Fang Chen dated March 16, 2006, attached hereto as Exhibit "I", and Exhibit "J".

In addition, neither Plaintiff has pursued claims or grievances against any subsequent employer and both have certified as much. Neither Plaintiff has claimed that as a result of the discrimination she faced at King Chef, she was too distraught to seek subsequent employment. Moreover, both are willing to stipulate that the emotional distress they experienced at the hands of Defendants has not affected them in their current employment. Neither Plaintiff seeks back pay or

front pay.   Accordingly, the identity of Plaintiffs' current employers and the content of Plaintiffs' current employment records are not relevant to any claim or defense in this matter.   Plaintiffs thus appeal the March 7 Order and seek a protective order protecting the identity of Plaintiff Shu Fang Chen's current employer, relieving both Mei Ying Liu and Shu Fang Chen of their obligation to obtain copies of their personnel files or other employment records from their current employers, and preventing Defendants from contacting Plaintiffs' current employers.

## JURISDICTION

Although discovery and other pre-trial matters are being overseen by Judge Shwartz, Plaintiffs have not consented to trial by Magistrate Judge.  Because the present dispute is over a non-dispositive matter, and Judge Shwartz does not have the consent of the parties to try this matter, Fed. R. Civ. P. 72(a) and L. Civ. R. 72.1(c)(1)(A) give the Court jurisdiction to hear this appeal.

## STANDARD OF REVIEW

A Magistrate Judge's legal conclusions are subject to *de novo* review.  See Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d. Cir. 1992) ("the phrase 'contrary to law' indicates plenary review as to matters of law"); Lo Bosco v. Kure Eng'g, 891 F. Supp. 1035, 1037 (D.N.J. 1995) ("this Court's review is plenary as to matters of law" and the District Court will review the legal conclusions *de*

*novo*); Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998). A ruling is contrary to law "if the Magistrate Judge has misinterpreted or misapplied applicable law." Koch Materials Co. v. Shore Slurry Seal, Inc., 216 F.R.D. 301, 304 (D.N.J. 2003). A Magistrate Judge's factual findings can be reversed where they are clearly erroneous. Haines, 975 F.2d at 91.

## LEGAL ARGUMENT

**I.   IT IS MANIFESTLY UNJUST TO REQUIRE PLAINTIFFS TO IDENTIFY THEIR CURRENT EMPLOYERS AND PROVIDE THEIR PERSONNEL FILES WHEN THE INFORMATION SOUGHT IS NOT RELEVANT TO THE CLAIMS AND DEFENSES IN THIS LAWSUIT AND PROVIDING THE INFORMATION THREATENS TO IMPOSE AN EXTREMELY HEAVY BURDEN ON PLAINTIFFS.**

"[Motions for reconsideration] will only be granted where . . . the need to correct a clear error of law or prevent a manifest injustice arises." P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). It is manifestly unjust to require Plaintiffs to risk their jobs only to provide the Defendants with evidence that is not relevant to the claims or defenses at issue here. The Defendants have presented various rationales for their request for information regarding Plaintiffs' current employers, none of which can outweigh the burden such request places on Plaintiffs. As described below, the information sought is irrelevant and unnecessary given that Plaintiffs do not seek

13

back pay or front pay; Plaintiffs are willing to stipulate that their emotional distress has not affected their current employment; Plaintiffs have not brought any complaints or grievances against other employers; and Plaintiffs' current job performance in the positions of cashier and salesperson is inadmissible as evidence regarding their performance as waitresses while employed by Defendants.

A.    **It Is Appropriate to Limit Discovery to Protect Parties from Unduly Burdensome Requests.**

Discovery in civil cases is limited to matters "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26 (b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351-352 (1978); see Topo v. Dhir, 210 F.R.D. 76, 79 (S.D.N.Y. 2002) (explaining that "even with regard to relevant matters, courts have broad discretion to limit or bar discovery altogether"). Discretionary limitations on discovery can be crucial to prevent a "fishing expedition" where a defendant uses the discovery process to make unwarranted and directionless inquiries into information with little or no relevance to the action. See In re Surety Ass'n of America, 388 F.2d 412, 414 (2nd Cir. 1967) (noting that "practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.").

14

A court may limit the scope of discovery or forbid discovery of even a relevant matter to protect a person from annoyance, embarrassment, oppression, undue burden, or expense through the grant of "any order which justice requires." Fed. R. Civ. Pro. 26 (c).  Accordingly, courts regularly deny discovery where the discovery sought is "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Myrin v. Federal Ins. Co., No. 95-7903, 1996 WL 355347 at *3 (E.D. Pa. Oct. 27 1994) (quoting Musicom INt'l. Inc. v. Serubo, No. 94- 1920, 1994 WL 590619 at *2 (E.D. Pa June 19, 1996).

Finally, there is no question that "information sought by Defendant does not become relevant merely because Defendant speculates that it might reveal useful material." Surles v. Air France, 2001 U.S. Dist. LEXIS 15315, 5-6 (S.D.N.Y. 2001).  Information requested in discovery  "is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation." Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1326 (Fed. Cir. 1990).

**B.** **Where Information Concerning  a Party's Current Employer Has Limited Probative Value, Courts Have Protected That Information From Discovery.**

Courts facing issues similar to those presented here have found that defendants are not entitled to pursue discovery from plaintiffs' employers when

doing so threatens significant harm to plaintiffs' current employment. See, e.g.,

Graham v. Casey's Gen. Stores, Inc., 206 F.R.D. 251, 256-257 (S.D. Ind. 2002)

(quashing a subpoena served upon plaintiff's current employer on the grounds that

the subpoena would be a tool for harassment in plaintiff's current job); Perry v.

Best Lock Corp., No. IP 98-C-0936-H/G, 1999 WL 33494858 (S.D. Ind. Jan. 21,

1999) (quashing 19 subpoenas of plaintiff's "past, present, and prospective

employers" where the burden upon plaintiff included "broadcasting to a large

group of businesses that [defendant] views [plaintiff] as an untrustworthy

troublemaker"); Doe v. Handman, 1999 U.S. Dist. LEXIS 17856, 11-14 (S.D.N.Y.

1999) (allowing plaintiff to certify to certain relevant matters in lieu of depositions

of her current employer where she had reasonable fear that disclosing her

involvement with the pending suit to her current employer might jeopardize her job

and career); see also Premer v. Corestaff Servs., L.P., 232 F.R.D. 692, 693 (M.D.

Fla. 2005) (finding that defendant's subpoena to plaintiff's former employers

seeking "entire personnel and benefit files, records relating to her hiring,

termination, performance, any disciplinary action received by her in the course of

employment, compensation, and benefits" was on its face overbroad and not

reasonably calculated to lead to the discovery of admissible evidence); Richmond

v. UPS  Serv. Parts Logistics, No. IP01-1412-C-K/H, 2002 WL 745588 (S.D. Ind.

Apr. 25, 2002) (holding that while plaintiff's evaluations and disciplinary records

from subsequent employer were relevant where defendant sought to establish
"after acquired evidence" defense for plaintiff's termination, defendant's request to
obtain entire personnel file from subsequent employer was "on its face, overbroad
and not calculated to lead to the discovery of admissible evidence"); Williams v.
Bd. of County Comm'rs, 192 F.R.D. 698, 705 (D. Kan. 2000) (finding in civil
rights suit, where plaintiff alleged emotional distress but made no claim for back
pay, that employment records from current and previous employers were not
relevant or reasonably calculated to lead to the discovery of admissible evidence).

In Graham, for instance, a case alleging employment discrimination
on the basis of disability, the plaintiff moved to quash the defendant's subpoenas
on her current employer seeking, among other things, her personnel file, her salary
history, and records concerning any complaints or lawsuits she may have filed
against that employer. 206 F.R.D. at 253. The court found that because (in
contrast to the present case) Graham was seeking back pay, her salary history was
relevant to the issue of mitigation of damages, but further ruled that because salary
information was available from an alternative source, the subpoena to her
employers was improper. Id. at 254-55. The court also held that because the
defendant presented specific evidence suggesting that Graham may have been
untruthful in her application for her current job, that the defendant could seek her
application because of the relevance such information might have to Graham's

credibility. However, the court required the defendant to utilize a less intrusive method than an employer subpoena to obtain this information, and thus ordered Graham to turn over copies of her application, while quashing the subpoena on Graham's current employer. Id. at 255. Finally, the court held that the defendant could not discover information concerning any other complaints, grievances, or lawsuits brought by Graham against Graham's current employer. Id. at 256. Although the court noted that the information was conceivably relevant, it reasoned, "Graham has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job." Id. The court thus concluded, "While discovery of this information may go to Graham's credibility or motive, the Court concludes that Defendant, to overcome this legitimate concern, must present independent evidence that provides a reasonable basis for it to believe that Graham has filed complaints, grievances, lawsuits or charges [against her current employer]." Id. In the absence of such independent evidence, the subpoena was quashed.

In Perry, another employment discrimination suit, the defendant, Best Lock, served subpoenas on Perry's current and former employers seeking any documents related to Perry. 1999 WL 33494858, *1. Best Lock argued that it needed the records to formulate a "possible after-acquired evidence defense," to

investigate any possible performance problems on Perry's part, and to "confirm if Plaintiff has a penchant for bringing frivolous claims against her employers." Id. at *2. While the court acknowledged that "it [was] at least imaginable" that Best Lock might turn up relevant evidence by combing these records, it nevertheless quashed the subpoenas. Id. at *2, *4. Specifically the court stated, "The fact that one can imagine these subpoenas leading to the discovery of admissible evidence is not alone sufficient to justify their enforcement." Id. at *2. It went on to explain, "[T]here is no specific reason before the court suggesting that the discovery Best Lock seeks from plaintiff's past, current and prospective employers would have any material importance for resolving the issues presented in this case." Id. at *3. As a result, the court concluded, Best Lock was "not entitled . . . to use the compulsory process of the United States courts to pursue information it hopes exists." Id. (emphasis added). The court disallowed the discovery because Best Lock's request amounted to nothing more than "a fishing expedition, or more accurately, an exercise in swamp-dredging and muck racking." Id. at *3.

It is not only in employment disputes that courts have protected employment information from discovery based on the harm such discovery might have on plaintiff's career. In Doe, the plaintiff sued her psychotherapist for emotional distress and sexual assault. 1999 U.S. Dist. LEXIS 17856 at *2. She sought a protective order prohibiting the defendant from deposing former and

present employers on the grounds that revealing such "sensitive and embarrassing matters" would be harmful to her career.  Id. at * 11.  The court noted that a "person resisting discovery on the basis of confidentiality must first demonstrate that the disclosure might be harmful . . . [Then the] burden shifts to the party seeking discovery to establish that the disclosure is both relevant and <u>necessary</u> to the action . . ."  Id. (emphasis added).  Doe demonstrated a potential harm was the loss of employment.  Id. at * 13.  The defendant was unable to demonstrate a need for depositions of her current employer because Doe's current psychotherapist testified that Doe "did not express any signs of emotional distress in the workplace."  Id.  In other words, there was a less burdensome way for the defendant to obtain the relevant portion of the evidence.  Id.

As these cases make clear, in the absence of any specific, supported rationale for Defendants' belief that these inquiries will yield admissible evidence, and given alternative avenues for obtaining any relevant information, this Court should prevent Defendants from engaging in a fishing expedition regarding Plaintiffs' current employment because of the heavy burden of potential termination and harassment such discovery imposes on Plaintiffs.

**C.**     **Defendants Have Not Established that Plaintiffs' Current Employment Information Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence Relevant to Any Claim or Defense in this Action.**

    **1.**     **Plaintiffs' Current Employment Information Is Not Relevant to Calculation of Their Damages Because Plaintiffs Do Not Seek Front or Back Pay and Stipulate that Their Current Employment Has Not Been Affected by Emotional Distress.**

In the March 7 Order, the Magistrate Judge acknowledged that Plaintiffs' current employment information is not relevant to the issues of damages or mitigation because Plaintiffs do not seek front or back pay. See March 7 Order at fn. 2. The inquiry into Plaintiffs' current employment also cannot support any "after-acquired evidence" defense in this case, as such a defense is only available in cases alleging discriminatory termination, where plaintiffs seek reinstatement or back pay. See generally McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995). Nevertheless the Magistrate Judge held that the information was relevant to Plaintiffs' emotional distress claims. Presumably the Magistrate Judge relied on Metropolitan's claim that "we do not know whether plaintiffs are alleging that they were too emotionally distraught to find other employment." See Exhibit E. The Magistrate Judge provided no other justification or explanation to indicate what information Plaintiffs' current employers could provide that might relate to their claims of emotional distress.

Plaintiffs are not claiming any damages due to an inability to find work as a result of emotional distress after they left King Chef. Indeed, Plaintiffs have repeatedly stated, and the Magistrate Judge has accepted, that Plaintiffs are not seeking front or back pay to compensate for any period of unemployment. See March 7 Order at fn. 2. Moreover, Plaintiffs have certified that they have in fact sought and obtained other employment since leaving King Chef and have provided the dates of that employment to the best of their recollection. See March 3, 2006, Letter from George Patterson to Donna du Beth Gardiner and Steve Mannion, attached hereto as Exhibit "J". Finally, Plaintiffs are willing to stipulate that the emotional distress they suffered at the hands of Defendants has not affected them in their current employment, thus ensuring that Defendants will not be required to defend against any such claims at trial. Just as in Doe v. Handman, where other testimony established that the plaintiff "did not express any signs of emotional distress in the workplace," thus obviating any need to depose her current employer, in this case as well Plaintiffs have offered a less burdensome avenue to obtain the desired evidence, thus rendering current employer discovery unnecessary and unjustifiable in its burden. See Doe, 1999 U.S. Dist. LEXIS 17856, at *13.

2. **Information Concerning Plaintiffs Current Employers Is Not Relevant Because Plaintiffs Have Previously Certified They Have Not Brought Similar Claims Against Subsequent Employers.**

Metropolitan attempts to justify discovery into Plaintiffs' current employers to determine if "plaintiffs have made other similar claims." See Exhibit "E". When such a request regarding other complaints, grievances, or charges has the potential to harass a plaintiff in her current employment, a defendant "must present independent evidence that provides a reasonable basis for it to believe that [the plaintiff] has filed" such complaints, grievances, lawsuits, or charges relating to her current employment. Graham v. Casey's Gen. Stores, Inc., 206 F.R.D. 251, 256-257 (S.D. Ind. 2002); see also Premer, 232 F.R.D. at 693 ("Defendant failed to provide any reason to suspect Plaintiff made prior complaints of religious discrimination or retaliation during her previous employment, and thus production of records in this regard is overly intrusive and unnecessary"); Perry, 1999 WL 33494858, at *2 (bare possibility that discovery might turn up frivolous charges against other employers not sufficient justification for burdens such discovery imposed). Not only have Defendants provided no such independent evidence, Plaintiffs have certified that they have not brought any such complaints, grievances, lawsuits, or charges against any other employer. See Exhibits "K" and "L". Defendants' discovery requests are thus insupportable on this basis.

3.    **Discovery Concerning Plaintiffs' Current Job Performance Is Not Reasonably Calculated to Lead to Admissible Evidence Relevant to Their Job Performance at King Chef.**

Defendants seek discovery concerning Plaintiffs' current employers based on their speculation that such information might reveal that Plaintiffs are bad workers. See Exhibit G at 33:8-12. Specifically, Defendants have stated:

> With regard to wages at subsequent employers, one thing that I am very interested in is the work habits of these two plaintiffs. Not –- not only at my client's restaurant, but at other restaurants and other places of employment, and the wages that they would have made at other restaurants, could also be indicative of their work habits. There's an issue here, an allegation, that they were treated differently than other employees. They haven't identified the other employees that they were treated differently than, but we're going to need to find out were these people, if they were treated differently, because they weren't good workers. And that's going to be an issue that we need to explore with –- with other employers.

Id. (emphasis added). As the Perry court noted, such a rationale is "highly attenuated" given that any evidence of a plaintiff's job performance with other employers falls "at the very outer boundaries of possible admissible evidence." 1999 WL 33494858, at *3. This is especially so given that neither Plaintiff is currently employed as a waitress and given that almost five years have passed since Plaintiffs' employment at King Chef. See Exhibits "H" and "I".

24

Thus, even assuming that Defendants were to obtain information from Plaintiffs' current employers that indicate Plaintiffs are poor workers, Plaintiffs would move, almost certainly successfully, to have the information excluded at trial pursuant to Federal Rules of Evidence 401 and 403.[1]  The information Defendants seek is substantially removed in time from the events at issue here and thus its probative value is severely diminished.  <u>Ansell v. Green Acres Contr. Co.</u>, 347 F.3d 515, 525 (3d Cir. 2003) (noting that the more remote in time an alleged act is from subsequent acts, the less probative the subsequent acts).  As a cashier and a salesperson, the current job duties of each Plaintiff are significantly different from their duties at King Chef.  Thus, any current job performance issues would shed very little light on their performance as waitresses.  Moreover, if Plaintiffs' work habits truly are the reason they were treated poorly while at King Chef, Defendants should be able to produce witnesses who can testify as to their poor performance at King Chef.  Thus, any evidence concerning Plaintiffs' current work habits would be at best cumulative, if not outright prejudicial, and clearly inadmissible under Rule 403.  The relevant case law makes clear that before undertaking burdensome and harassing discovery regarding a plaintiff's current

---

[1] Federal Rule of Evidence 401 states, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Federal Rule of Evidence 403 states "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence."

employment, defendants must offer more than their bare speculation that such discovery might yield admissible evidence.  In the absence of support for such speculation, Defendants' fishing expedition must not be allowed.  See Premer, 232 F.R.D. at 693; Graham, 206 F.R.D. at 256; Perry, 1999 WL 33494858, at *3.

In conclusion, "[A] party seeking discovery must demonstrate a real, practical need for the information." Consolidated Rail Corp. v. United States, 812 F.2d 1444, 1463 (3d Cir. 1987).  Defendants cannot demonstrate a real, practical need for Plaintiffs' current employment information as they rely solely on speculation that the information sought might be relevant to a claim or defense in this matter.  Given the information's purely speculative relevance, Plaintiffs should not be required to risk their livelihood and expose themselves to potential harassment at the hands of Defendants.  As the Third Circuit has warned in a related context, "The prospect of a defendant's thorough inquiry into the details of a plaintiff's . . . post-hiring conduct . . . may chill the enthusiasm and frequency with which employment discrimination claims are pursued, even in cases where the victim of discrimination has nothing to hide" leading to under-enforcement of civil rights laws.  Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1236 (3d Cir. 1993), vacated and remanded, 415 U.S. 1034 (1995), reinstated in relevant part, 65 F.3d 1072 (1995).  Plaintiffs have indicated that if there is no way to proceed with this case without permitting additional discovery into their current employment,

26

they are likely to drop their claims rather than pursuing the case. Defendants

should not be permitted to intimidate Plaintiffs into abandoning some or all of their

claims through this discovery.

## II.    PLAINTIFFS' FEAR OF TERMINATION IS NEWLY DISCOVERED EVIDENCE THAT WARRANTS RECONSIDERATION.

In the Magistrate Judge's March 7 Order, she notes that Plaintiffs

raised "newly discovered" information as the basis for their motion for

reconsideration. As set forth in the attached Certification of Mei Ying Liu, and as

Plaintiffs would have set out for the Magistrate Judge had they been permitted to

brief their Motion for Reconsideration, only one day prior to the February 16, 2006

telephonic hearing before Judge Shwartz, Liu learned that a co-worker was fired

simply for seeking the assistance of Liu's employer to obtain public benefits. This

new information significantly deepened Liu's fear of termination should her

employer become aware of or be burdened by the current litigation. See Exhibit

"M".

Since the initiation of this lawsuit, relying on nearly unanimous

rulings in their favor, Plaintiffs have asserted that their immigration status is

neither relevant to their claims nor a proper subject of discovery in this case, due to

the harassing effect discovery of immigration status has on immigrant plaintiffs.

Based on Defendants' statement that they wished to "discover whether [Plaintiffs]

have provided the necessary I-9 documentation to establish eligibility to work in

27

this country," <u>see</u> Exhibit "E", Plaintiffs believed that Defendants' inquiries regarding their current employment were designed to discover their immigration status, as Plaintiffs' counsel made clear during the telephonic hearing before the Magistrate Judge.  <u>See</u> Exhibit G at 29:22 - 30: 4.  Because the Magistrate Judge addressed that concern at the hearing, Plaintiffs' counsel believed they had addressed the entirety of Plaintiffs' concerns.  It was only when counsel relayed to Plaintiffs that the Magistrate Judge had ordered them to reveal the identity of their current employers that Plaintiffs expressed their fear of termination.  Though Plaintiffs themselves were aware of their fears prior to the hearing, their counsel was not.  It is unreasonable and inequitable to force Plaintiffs to risk the loss of their jobs because they neglected to communicate the full range of their concerns to counsel initially, particularly given that the new evidence of the termination of Liu's co-worker had deepened their fears.

Moreover, even absent new evidence, "[m]otions for reconsideration will also be granted where . . . <u>the need to . . . prevent a manifest injustice arises</u>." <u>P. Schoenfeld Asset Mgmt. LLC</u>, 161 F. Supp. 2d at 352 (emphasis added).  It is manifestly unjust to require Plaintiffs to risk on-the-job harassment and termination based on the remote chance that Defendants' speculative investigations might eventually uncover some tangentially relevant evidence.  Should the Court's March 7 Order stand, it is very likely that Plaintiffs will abandon their claims, not

out of fear that the information Defendants are seeking will harm their case, but out of fear that the process by which that information is obtained will cost them their jobs and subject them to further harassment and intimidation at the hands of the Defendants.  Defendants should not be permitted to benefit from Plaintiffs' reasonable fear.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reverse Magistrate Judge Shwartz's March 7, 2006, Order and enter an order protecting the identity of Shu Fang Chen's current employer, relieving Plaintiffs of their obligation to obtain copies of their current personnel files or other employment records, and preventing Defendants from making any contact with Plaintiffs' current employers.

Respectfully submitted,

Date: March 21, 2006

/s/ George E. Patterson, Jr.
George E. Patterson, Jr. (GP-4783)
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068-1791
Tel: 973-597-2492
Fax: 973-597-249
On behalf of the ACLU-NJ

Edward M. Barocas (EB-8251)
American Civil Liberties Union of
New Jersey Foundation

Lenora M. Lapidus (LL-6592)
Claudia M. Flores (CF-4932)
Women's Rights Project

29

P.O. Box 750                          American Civil Liberties Union Foundation
Newark, NJ 07102                      125 Broad Street, 18th Floor
Tel: 973-642-2086                     New York, NY 10004
Fax: 973-642-6523                     Tel: 212-519-7816
                                      Fax: 212-549-2580