# EXHIBIT A





*EEOC Policy Toward*
*Undocumented Aliens*
### *Law Offices of Carl Shusterman*
### *624 So. Grand Avenue, Suite 1608, Los Angeles, (213) 623-4592*
### *Return to Homepage*

**Send to a Friend**

*(Search Tips)*

*The U.S. Equal Employment Opportunity Commission*

FOR IMMEDIATE RELEASE                    CONTACT:  Reginald Welch
Tuesday, October 26, 1999                          David Grinberg
                                                   (202) 663-4900
                                          TTY: (202) 663-4494

# EEOC ISSUES GUIDANCE ON
# REMEDIES FOR

# UNDOCUMENTED WORKERS UNDER LAWS PROHIBITING EMPLOYMENT DISCRIMINATION

WASHINGTON - The U.S. Equal Employment Opportunity Commission (EEOC) today issued an enforcement guidance modifying its position on remedies available to unauthorized workers under federal employment discrimination laws. The guidance addresses recent legal developments and explains the basic remedies available to this class of workers under EEOC- enforced laws.

"This guidance makes clear that the anti-discrimination laws under the Commission's jurisdiction protect all employees across the country, regardless of their work status," said EEOC Chairwoman Ida L. Castro. "Unauthorized workers are especially vulnerable to abuse and exploitation. It is imperative for employers to fully understand that discrimination against this class of employees will not be tolerated and that they will be responsible for appropriate remedies if they violate the civil rights laws."

Chairwoman Castro further explained that the new guidance is fully consistent with the nation's immigration laws, principally the Immigration Reform and Control Act (IRCA). "If employers were not held responsible for discrimination against unauthorized workers, it would create an incentive for unscrupulous employers to engage in unlawful workplace conduct," said Ms. Castro. "This would directly undermine the enforcement of the immigration laws by encouraging the employment of unauthorized workers. It would also harm authorized workers who might be denied jobs or be subjected to a work environment which tolerated discrimination."

The new guidance addresses the availability of remedies under the following statutes, where an employer has unlawfully discriminated against undocumented workers: Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Equal Pay Act.

The guidance explains that undocumented workers are entitled to the same remedies as any other workers back pay, reinstatement if the employee was unlawfully terminated, hiring if the employee was denied a job due to discrimination, other appropriate injunctive relief, damages and attorneys' fees except in the very narrow situations where an award would directly conflict with the immigration laws. The guidance also emphasizes that unauthorized workers

are fully protected by the retaliation principles of the federal anti-discrimination laws.

The new guidance replaces EEOC's Policy Guidance: Effect of the Immigration Reform and Control Act on the Remedies Available to Undocumented Aliens Under Title VII (N-915.040) issued on April 26, 1989. The Commission re-evaluated its position on back pay in light of important legal developments since 1989 regarding the availability of back pay to undocumented workers under the closely related National Labor Relations Act. In addition, the Commission addressed other changes in the law since 1989, principally the creation of a damages remedy under Title VII and the Americans with Disabilities Act.

The guidance will be available on EEOC's web site (www.eeoc.gov) shortly after release of the document. It can also be obtained by calling or writing to EEOC's Office of Communications and Legislative Affairs, 1801 L Street, NW, Washington, D.C. 20507.

The EEOC enforces Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex, or national origin; the Age Discrimination in Employment Act, which protects workers 40 and older; the Equal Pay Act; the Americans with Disabilities Act, which prohibits discrimination against qualified individuals with disabilities in the private sector and state and local governments; prohibitions against discrimination affecting persons with disabilities in the federal government; and sections of the Civil Rights Act of 1991.



*This page was last modified on October 26, 1999.*

*The U.S. Equal Employment Opportunity Commission*

| | NOTICE | Number |
|---|---|---|
| | | |



| EEOC | | 915.002 |
| --- | --- | --- |
| ■■■■■ | | Date |

1. <u>SUBJECT</u>: Enforcement Guidance on Remedies Available to Undocumented Workers Under Federal Employment Discrimination Laws.

2. <u>PURPOSE:</u> The purpose of this Enforcement Guidance is to set forth the Equal Employment Opportunity Commission's (EEOC) position regarding remedies available to unauthorized workers in charges filed under federal employment discrimination statutes. This Enforcement Guidance rescinds and supersedes the "Policy Guidance: Effect of the Immigration Reform and Control Act of 1986 (IRCA) on the Remedies Available to Undocumented Aliens Under Title VII," N-915.040 (April 26, 1989).

3. <u>EFFECTIVE DATE</u>: Upon issuance.

4. <u>EXPIRATION DATE</u>: As an exception to EEOC Order 205.001, Appendix B, Attachment 4, section a (5), this Notice will remain in effect until rescinded or superseded.

5. <u>ORIGINATOR</u>: Coordination and Guidance Services, Office of Legal Counsel.

6. <u>INSTRUCTIONS</u>: This supersedes the "Policy Guidance: Effect of the Immigration Reform and Control Act of 1986 (IRCA) on the Remedies Available to Undocumented Aliens Under Title VII," N-915.040 (April 26, 1989). Discard the 1989 document and file this as Appendix B of Section 622, Volume II of the Compliance Manual.

7. <u>SUBJECT MATTER</u>: Remedies available to unauthorized workers in employment discrimination cases.

```
10-26-99          /s/
Date              Ida L. Castro
                  Chairwoman
```

*<u>INTRODUCTION</u>*

This Enforcement Guidance addresses the availability of remedies in cases where an employer[1] is found to have discriminated against unauthorized workers[2] in violation of Title VII of the Civil Rights of 1964, the Americans with Disabilities Act (ADA), section 501 of the Rehabilitation Act, the Age Discrimination in

Employment Act (ADEA), and the Equal Pay Act (EPA). Based on important legal developments, the Commission is replacing its April 26, 1989, guidance on Title VII remedies for undocumented workers. The Commission now concludes that unauthorized workers who are subjected to unlawful employment discrimination are entitled to the same relief as other victims of discrimination, subject to certain narrow exceptions which are discussed below. The pertinent legal developments include recent cases concerning remedies for unauthorized workers under the National Labor Relations Act, changes in the law regarding after-acquired evidence and mixed motive cases, and the addition of damages to the range of available remedies.

First, the National Labor Relations Board (NLRB) and the Second Circuit recently concluded that unauthorized workers are eligible for back pay under the National Labor Relations Act (NLRA). *A.P.R.A. Fuel Oil Buyers Group*, 320 N.L.R.B. 408, 151 L.R.R.M. 1209 (1995), *aff'd*, *NLRB v. A.P.R.A. Fuel Oil Group*, 134 F.3d 50 (2d Cir. 1997). The *A.P.R.A.* rationale, discussed in more detail below, applies equally to the federal employment discrimination statutes.[3]

Second, in the context of an after-acquired evidence case, the Supreme Court held that employee wrongdoing does not shield a discriminating employer from liability under the civil rights laws.[4] Similarly, Congress amended Title VII to provide that employers are liable when discrimination is part of the reason for an adverse employment action, even if it can show it would have taken the same action absent the discrimination.[5] Both changes recognize that deterrence is a central goal of the federal employment discrimination laws and that failure to penalize discriminating employers will undermine that goal.

Third, Congress has added compensatory and punitive damages to the range of available remedies under Title VII and the ADA. It did so because it had concluded that existing remedies were ineffective and that "additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace."[6] Inasmuch as undocumented workers are particularly vulnerable to employer abuse, awarding monetary remedies irrespective of a worker's unauthorized status promotes the goal of deterring unlawful discrimination without undermining the purposes of the immigration laws.

Finally, the ADA had not been enacted when the 1989 document was issued. This guidance highlights the fact that the principles governing remedies for unauthorized workers apply to all of the federal anti-discrimination statutes enforced by the EEOC, including the Rehabilitation Act and the ADA, as well as Title VII, the EPA, and the ADEA.

## *DISCUSSION*

### I. Requirements of Immigration Law

Prior to 1986, the immigration laws did not prohibit employers from employing unauthorized workers, although such workers were subject to deportation. In enacting the Immigration Reform and Control Act of 1986 (IRCA), however, Congress made it unlawful for employers to knowingly employ individuals who are not legally authorized to be employed in the United States and who were hired after November 6, 1986.[7]

To address concerns that the employer sanction provisions would cause discrimination against some national origin groups, IRCA prohibits employers that have from four to fourteen employees, and are therefore not covered by Title VII, from discriminating on the basis of national origin against U.S. citizens and nationals and non-citizens with work authorization.[8] It also prohibits citizenship status discrimination and discriminatory documentary practices by all employers who have four or more employees.[9] IRCA's nondiscrimination requirements are enforced by the Office of Special Counsel for Immigration Related Unfair Employment Practices (OSC), Civil Rights Division, at the U.S. Department of Justice.[10]

### II. Coverage of Unauthorized Workers Under Federal Discrimination Laws

The federal discrimination laws protect all employees in the United States, regardless of their citizenship or work eligibility. Employers may no more discriminate against unauthorized workers than they may discriminate against any other employees.[11] EEOC will therefore assure that in its enforcement of the laws, unauthorized workers are protected to the same degree as all other workers.

Recognizing that federal labor laws make no distinction based on alienage, courts have similarly held that all workers are protected by those laws, regardless of citizenship or work eligibility.[12]

In the leading case of *Sure-Tan v. NLRB*, 467 U.S. 883 (1984), the Supreme Court addressed the coverage of undocumented workers in the context of the NLRA and explained that affording those workers the protection of American labor laws promotes the purposes of both the labor and immigration laws.

The employer in *Sure-Tan* retaliatorily reported five employees to the Immigration and Naturalization Service (INS) because the employees had exercised NLRA-protected rights. The employer had been aware that the workers were undocumented and had not reported them to the INS until they participated in union activities. It was therefore clear that retaliation was the reason that he had reported them. The Court concluded that applying the labor law to undocumented workers served the purposes of immigration laws:

> [a] primary purpose in restricting immigration is to preserve jobs

> for American workers . . . . Application of the NLRA helps to
> assure that the wages and employment conditions of lawful
> residents are not adversely affected by the competition of illegal
> alien employees who are not subject to the standard terms of
> employment. If an employer realizes that there will be no
> advantage under the NLRA in preferring illegal aliens to legal
> resident workers, any incentive to hire such illegal aliens is
> correspondingly lessened. In turn, if the demand for undocumented
> aliens declines, there may then be fewer incentives for aliens
> themselves to enter in violation of the federal immigration laws.

467 U.S. at 893-94. This principle applies equally to the discrimination laws
within the Commission's jurisdiction.

Moreover, the EEOC agrees with the NLRB and those courts that have concluded
that the *Sure-Tan* decision is unaffected by the subsequent enactment of IRCA.
*A.P.R.A.,* 151 L.R.R.M. at 1215 ("[C]ongress . . . [in enacting IRCA] expressly
approved the view of the Supreme Court in *Sure-Tan* that undocumented workers
are entitled to established labor protections."), *aff'd, NLRB v. A.P.R.A. Fuel Oil
Buyers Group,* 134 F.3d 50, 55 (2d Cir. 1997) (NLRA).[13] Failure to protect those
workers would undermine enforcement of not only the anti-discrimination laws,
but also the immigration laws. Without such coverage, employers have an
incentive to hire workers who cannot effectively protest unlawfully discriminatory
treatment. As the Eleventh Circuit observed, in the context of the FLSA,
"coverage of undocumented workers has a[n effect similar to that of IRCA], in
that it offsets what is perhaps the most attractive feature of such workers - their
willingness to work [in substandard conditions. Without that offset] . . . employers
would have an incentive to hire them."[14]

**III. Remedies Available to Unauthorized Workers Who Are Victims of
Unlawful Discrimination**

**A. Purposes of Remedies Provisions of Federal Employment
Discrimination and Immigration Laws**

The remedies provisions of the federal anti-discrimination laws are intended both
to deter employment discrimination and to restore the injured employee to the
position s/he would have been in absent the discrimination. Some remedies, such
as requiring the employer to stop the discriminatory activities, adopt corrective
measures, post notices, or expand recruitment, serve primarily to prevent future
discrimination. Other remedies, such as instatement, reinstatement, or promotion,
serve primarily to make the victim whole.

Monetary remedies serve both purposes: they deter future discrimination[15] and
make the victim whole. Back pay is so central to the remedial scheme that the
Supreme Court has ruled that, where liability is found, back pay is a presumptive

remedy and "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."[16] Compensatory and punitive damages also serve make-whole and deterrence purposes.[17] Moreover, because a private suit serves important public purposes, the litigant will not be denied relief even if s/he has engaged in wrongdoing.[18]

The provisions of the Immigration and Nationality Act (INA) serve a different purpose - the deterrence of illegal immigration. The INS apprehends and removes those who have violated applicable immigration laws and imposes sanctions on employers who knowingly employ unauthorized workers hired after November 6, 1986. The purposes and remedial schemes of immigration and discrimination laws are not at odds with each other. Thus, where an unauthorized worker is found to have been a victim of employment discrimination, remedy awards can and should fulfill the goals of the employment discrimination statutes without undermining the purposes of the immigration laws.

### B. Availability of Remedies for Unauthorized Workers

#### 1. Injunctive Relief to Prevent Future Discrimination

Remedies that serve only to prevent future discrimination are unaffected by the immigration laws and remain available to redress violations of the employment discrimination laws without regard to an employee's work status. Such injunctive relief may include, for example, orders to post notices that the employer has been found to have discriminated, orders to stop the discriminatory practices, orders to purge personnel records of information regarding discriminatory actions, and orders to adopt some specific corrective action, such as implementing new hiring procedures, keeping data on all disciplinary actions, or providing training.

#### 2. Instatement or Reinstatement

Under federal employment discrimination laws, victims of discriminatory refusal to hire or discriminatory termination are presumptively entitled to instatement or reinstatement.[19] The Commission concludes that the same presumption applies to unauthorized workers who were hired on or before November 6, 1986 because IRCA does not prohibit employers from continuing to employ workers hired on or before that date.[20] This presumption also applies to workers hired after November 6, 1986 unless the employer knows that the worker is unauthorized, in which case the worker's eligibility for reinstatement depends on being able to satisfy IRCA's verification requirements within a reasonable time.[21]

The *Sure-Tan* Court held that unauthorized workers are protected by the NLRA and remanded the case to the Board to determine what remedies were appropriate in light of the fact that the workers had left the country and it was not clear

whether they had returned.[22] The Court placed only one constraint on the remedies the Board could order; namely, any offer of reinstatement was to be conditioned on the workers' lawful reentry. The Court imposed that restriction to avoid encouraging illegal reentry and thereby undermining the purpose of the immigration law.[23] In so doing, the Court made clear that the workers' original illegal entry did not preclude reinstatement or back pay.

At the time *Sure-Tan* was decided, employers were not prohibited from employing unauthorized workers. In *A.P.R.A.,* the Second Circuit considered whether, by enacting IRCA to make employing unauthorized workers illegal, Congress altered the *Sure-Tan* rule that unauthorized workers were entitled to relief.

As in *Sure-Tan*, the *A.P.R.A.* employer knowingly employed unauthorized workers and retaliated against them for participating in union activity. In *A.P.R.A.*, however, the workers had remained in the United States until the time of the decision. The Board concluded that "if full remedies are not granted, the illegitimate economic advantage to unscrupulous employers that knowingly employ undocumented workers has [a] . . . corrosive effect on congressional policies respecting the workplace . . . ."[24] To avoid a conflict with IRCA's prohibition against employing unauthorized workers, the Board ordered that the offer of reinstatement be conditioned on the workers' ability, within a reasonable period of time, to satisfy IRCA's normal verification of work eligibility requirements. In affirming the Board's order of conditional reinstatement, the Second Circuit explained that the Board "quite clearly tailor[ed] the remedy for the violation of the NLRA to the restrictions of" IRCA.[25] In addition, the court observed that the Board's remedy, "felicitously keeps the Board out of the process of determining an employee's immigration status, leaving compliance with IRCA to the private parties to whom the law applies.... the Board is not charged with the enforcement of the complex U.S. immigration laws."[26]

Like the Board, the EEOC is not charged with the enforcement of IRCA and should not participate in "the process of determining an employee's immigration status." Therefore, EEOC will neither collect nor evaluate evidence regarding a worker's status.

### 3. Back Pay and Damages

Unauthorized workers are entitled to back pay and appropriate damages on the same basis as other workers, unless the award would conflict with the purposes of the immigration laws. In the great majority of instances, monetary awards do not conflict with the purposes of immigration laws, but enhance them. Without monetary awards, including damages, employers who are unscrupulous may consider penalties under immigration law to be offset by the savings of employing unauthorized workers, thus defeating the objectives of immigration, civil rights, and labor laws and allowing employers to profit from their own wrongdoing.[27]

There are no limitations on damages for unauthorized workers, beyond those which would apply in any other case. However, there is a narrow limitation on the availability of back pay. To fulfill the requirements of the immigration laws, the *Sure-Tan* Court ruled that "in computing back pay, the employees must be deemed unavailable for work (and the accrual of back pay therefore tolled) during any period when they were not lawfully entitled to be present and employed in the United States."[28] The Commission construes this language to limit back pay relief only where, as in *Sure-Tan,* the worker is unavailable for work by virtue of being out of the country.[29]

The Commission adopts this interpretation for several reasons. The Supreme Court, in *Sure-Tan,* did not hold that the employees' original unlawful entry precluded awards of reinstatement or back pay. Its reversal of the appellate court's award of six months back pay was, instead, because it regarded as unduly speculative the appellate court's surmise that, absent the unlawful retaliation, the workers would have worked for another six months.[30] In addition, " *Sure-Tan* gave no indication that it was overruling a significant line of [NLRB] precedent that disregards a discriminatee's *legal status,* as opposed to *availability for work,* in determining his or her eligibility for back pay."[31]

The Commission concludes that IRCA does not preclude awarding back pay and damages to unauthorized workers because, as the Second Circuit has observed,

> [while] IRCA established sanctions for employers who knowingly hire or continue to employ illegal aliens, . . . and also introduced procedures to assure that undocumented workers are not able to gain employment in the United States, . . . IRCA does not materially change the policy considerations underlying the previous decisions . . . . The primary purpose of IRCA was to make it more difficult to employ undocumented workers and to punish the employers who offer jobs to these workers . . . . Congress sought to reduce the availability of jobs for undocumented workers without adversely affecting working conditions within those jobs.

*A.P.R.A.,* 134 F.3d at 55.[32]

Significantly, the conclusion that employers must make monetary awards to victims of discrimination despite lack of work authorization comports with the rules governing cases in which the employer is guilty of discrimination but the employee is also guilty of wrongful acts that would have motivated the employer to terminate the employment relationship.  The governing principle is that, because monetary remedies serve not only remedial but also deterrence purposes, employee wrongdoing does not bar relief.[33]

In short, employers who discriminate against unauthorized workers are liable for monetary relief, including compensatory, punitive, or liquidated damages, to the

same extent as for authorized workers. An employer is not liable for back pay accruing during any period during which the worker is unavailable for work because s/he is out of the country.[34] In addition, back pay will stop accruing if the worker is reinstated, or, within a reasonable period of time after being offered instatement or reinstatement,[35] the worker cannot show work eligibility.

### 4. Remedies for Discrimination in the Terms and Conditions of Employment or For Failure to Promote

The undocumented status of workers is never a justification for subjecting them to discriminatory terms or conditions of employment or for failing to promote them. Thus, for example, workers who have been discriminatorily undercompensated or harassed while working are entitled to all appropriate relief, including full back pay, for the period worked, even if they have subsequently left the country. They were clearly "available" for work for periods during which they were actually working.

### 5. Remedies in Cases of Retaliation

Unauthorized workers are particularly vulnerable to threats to report them to INS. If such a threat or report is made because a worker opposed unlawful discrimination or participated in a proceeding under the anti-discrimination laws, it constitutes unlawful retaliation. In every case in which the employer asserts that the worker is unauthorized and appears to have acquired that information after that worker complained of discrimination, EEOC will determine whether the information was acquired through a retaliatory investigation.[36] If the investigation was retaliatory, the employer is liable for monetary damages for retaliation without regard to the worker's actual work status as well as for appropriate equitable relief.

### 6. Attorneys' Fees and Costs

Attorneys' fees and costs are available to unauthorized workers on the same terms as to other workers who are prevailing parties under laws enforced by the Commission.[37] Attorneys' fees and costs are available in mixed motives cases, even though reinstatement, back pay, and damages are not.[38]

## C. Limitations on Remedies: Mixed Motive and After-Acquired Evidence Analysis

As in any discrimination case, an employer may be able to limit the remedies available for its discriminatory acts if it can prove that it acted from mixed motives, *i.e.*, that it would have taken the same action even absent the discrimination,[39] or that, after the discriminatory act, it acquired evidence that would have caused it to take the same adverse action.[40] A worker's unauthorized status can be a legitimate reason that may form the basis for a mixed motive or after-acquired evidence defense and thereby limit the available remedies.

In mixed motive cases, the employer can be liable for attorneys' fees and injunctive relief, but the complaining party is not entitled to reinstatement, back pay, or any damages.[41] In after-acquired evidence cases, if the employer can show that it would not have employed the person after learning of his or her unauthorized status, the worker would not typically be entitled to reinstatement and the period during which back pay accrues would be cut off as of the date that the employer discovered the unauthorized status.[42] Punitive damages and damages for emotional harm would be unaffected by the after-acquired evidence.[43]



1. To simplify the discussion, the term "employer" in this document includes not only covered employers but also labor organizations and employment agencies. The principles in the guidance also apply to federal employers.

2. For purposes of this document, the term "undocumented or unauthorized worker" means, with respect to employment at a particular time, one who is not a citizen or national of the United States and is neither (1) lawfully admitted for permanent residence in the United States, nor (2) authorized by law to work. *See* Immigration and Nationality Act, as amended by the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324a (h)(3); *see also* 8 C.F.R. § 274a.1.

3. The interpretation of the back pay provision of the NLRA is relevant to Title VII since Title VII's "back pay provision was expressly modeled on the back pay provision of the National Labor Relations Act." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975). The conclusion in the 1989 document, that unauthorized workers who had been discriminatorily terminated or not hired were not entitled to back pay, accorded with the position of the NLRB at that time.

4. *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352 (1995).

5. Section 703(m) of Title VII, 42 U.S.C. § 2000e-2(m).

6. 42 U.S.C. § 1981a, note. *See also* H.Rep. No. 40(I), 102d Cong., 1st Sess. 69, *reprinted in* 1991 U.S.C.C.A.N. 549, 607 ("Making employers liable for all losses - economic and otherwise - which are incurred as a consequence of prohibited discrimination, . . . will serve as a necessary deterrent to future acts of discrimination, both for those held liable for damages as well as the employer community as a whole. . . . Back pay as the exclusive monetary remedy under Title VII has not served as an effective deterrent, and, when back pay is not available . . ., there is simply no deterrent.").

7. 8 U.S.C. § 1324a. Criminal penalties can be imposed in cases involving a pattern or practice of knowingly employing unauthorized workers. *Id.* Congress further amended the Immigration and Nationality Act in 1990, imposing civil penalties on individuals who provide fraudulent immigration documents. 8 U.S.C. § 1324c (1994).

8. 8 U.S.C. § 1324b(a)(1).

9. 8 U.S.C. § 1324b(a)(1)(B) and § 1324b(a)(6). IRCA's protection against citizenship discrimination applies only to U.S. citizens or nationals, permanent residents, refugees, asylees, and temporary residents. Permanent residents, however, must apply for naturalization within six months of eligibility to remain within the protected class. 8 U.S.C. § 1324b(a)(3). U.S. citizens, nationals, and all individuals with work authorization are also protected by IRCA's prohibition against unfair documentary practices, such as discriminatorily requesting more or different documents than required by 8 U.S.C. § 1324a, or refusing to honor documents that appear genuine. 8 U.S.C. § 1324b(a)(6).

IRCA's nondiscrimination provisions are not directly germane to the remedies issues discussed in this guidance. The references to IRCA in this guidance relate only to the employer sanction provisions.

10. Charges raising issues under those provisions should be referred to OSC as provided in the Memorandum of Understanding (MOU) between OSC and EEOC. 63 Fed. Reg. 5518 ( Feb. 3, 1998).

11. *See Espinoza v. Farah Mfg. Co.,* 414 U.S. 86 (1973) (Title VII protects non-citizens against race, color, sex, religious, and national origin discrimination)*; EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1517 (9th Cir. 1989) (plaintiffs were subject to Title VII's protections notwithstanding their status as undocumented workers ); *Rios v. Enterprise Ass'n Steamfitters Local Union 638 of U. A.*, 860 F.2d 1168, 1173 (2d Cir. 1988) (same). *But see Egbuna v. Time Life Libraries, Inc.*, 153 F.3d 184 (4th Cir. 1998), *cert. denied,* 119 S.Ct. 1034 (1999), in which the court took the contrary view: that an applicant who is unauthorized has no cause of action under Title VII for an allegedly discriminatory refusal to hire. For the reasons discussed in this guidance, the Commission disagrees with the Fourth Circuit.

12. While this conclusion is based in part on the fact that the labor laws protect "any individual," the same rationale applies to the Equal Pay Act, which, although part of the Fair Labor Standards Act (FLSA), refers to "employees" rather than to "any individual." Like Title VII, the FLSA contains no exemption for unauthorized workers. *Patel v. Quality Inn South*, 846 F.2d 700, 704 (11th Cir. 1988) "[N]othing in IRCA or its legislative history suggests that Congress intended to limit the rights of undocumented . . . [workers] under the FLSA . . . ."), *cert. denied*, 489 U.S. 1011 (1989).

13. *See also EEOC v. Switching Systems Div. of Rockwell Int'l Corp.*, 783 F. Supp. 369, 374 (N.D. Ill. 1992) ("Title VII's protections extend to workers who may be in this country either legally or illegally"; however, no Title VII violation because employer's policy discriminated, if at all, only on the basis of citizenship and not national origin) (post-IRCA); *EEOC v. Tortilleria "La Mejor,"* 758 F. Supp. 585, 591 (E.D. Cal. 1991) (same); and *Patel,* 846 F.2d at 704 (FLSA applies to undocumented workers post-IRCA). *But see Egbuna,* 153 F.3d 184 (because IRCA renders unauthorized workers unqualified to work, an unauthorized worker cannot challenge hiring discrimination). *Cf. EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1517 n.11 (9th Cir. 1989) ("although we need not decide the issue in this case [which arose pre-IRCA], it may well be that [IRCA] changes the mix of policy considerations underlying the case law which supports our conclusion that undocumented employees may recover back pay in a Title VII action") (citation omitted).

14. *Patel,* 846 F.2d at 704. *See also A.P.R.A.,* 151 L.R.R.M. at 1215 ("Congress believed that providing . . . [unauthorized workers] the same protections . . . afforded to American employees was the most effective means of eliminating the economic incentives for employers to hire undocumented . . . [workers]"), *aff'd,* 134 F.3d at 56.

15.

> If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a [monetary] award that 'provide[s] the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this country's history.'

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417-18 (1975) (citation omitted).

16. *Id.* at 421.

17. For detailed information on appropriate compensatory and punitive damage awards under Title VII and the ADA, see "Enforcement Guidance on Compensatory and Punitive Damages Available Under § 102 of the Civil Rights Act of 1991," EEOC Compliance Manual (BNA) N:6071, 6076 (July 14, 1992). Liquidated damages are available for violations of the Equal Pay Act and for willful violations of the ADEA and track the amount of the back pay award. *See* Section 7(b) of the ADEA, 29 U.S.C. § 626(b), and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

18. *McKennon,* 513 U.S. at 358, citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 45 (1974).

19. *See, e.g., Roush v. KFC Nat'l Management Co.,* 10 F.3d 392, 398 (6th Cir. 1993), *cert. denied,* 513 U.S. 808 (1994) (ADEA); *Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1424 (4th Cir.), *cert. denied,* 502 U.S. 963 (1991) (ADEA); *Henry v. Lennox Indus., Inc,* 768 F.2d 746, 752 (6th Cir. 1985) (Title VII). Of course, the presumption can be overcome. For example, the employer may be able to show that the employee would not have gotten the job even absent the discrimination.

20. INS regulations provide that such workers are "grandfathered" and not subject to IRCA's employment verification requirements. 8 C.F.R. § 274a.7(a). The regulations further provide that wrongful termination followed by reinstatement should not be considered a break in service sufficient to cost those workers their "grandfathered" status. 8 C.F.R. § 274a.2(b)(1)(viii)(5).

21. Except in this very narrow circumstance, employers may not request or reexamine I-9 documents of workers returning from a discriminatory discharge. 8 U.S.C. § 1324b(a)(6); 8 C.F.R. § 274a.2(b)(1)(viii).

22. *Sure-Tan,* 467 U.S. at 904-06. INS permitted the *Sure-Tan* plaintiffs to leave the country voluntarily in lieu of deportation, and they did so immediately.

23. *Id.*

24. *A.P.R.A.,* 151 L.R.R.M. at 1216.

25. *A.P.R.A.,* 134 F.3d 50, 57.

26. *Id.*

27. Granting unlawful workers full redress for violations . . . should act as a deterrent to such unprincipled and opportunistic employers, and level the competitive playing field between them and the vast majority of employers in the United States that recognize and respect the rights of their employees and that carefully follow the procedures that IRCA requires.

*A.P.R.A.,*151 L.R.R.M. at 1216, *aff'd,* 134 F.3d at 56. *See also Patel,* 846 F.2d at 704-05 (FLSA).

28. 467 U.S. at 903.

29. The Second and Ninth Circuits support this position. *A.P.R.A.,* 134 F.3d at 54 (post-IRCA); *Rios,* 860 F.2d 1168 (2d Cir. 1988) (pre-IRCA); *Local 512, Warehouse and Office Workers' Union v. NLRB,* 795 F.2d 705 (9th Cir. 1986) (pre-IRCA).

The Seventh Circuit took a contrary position in *Del Rey Tortilleria, Inc. v. NLRB,* 976 F.2d 1115 (7th Cir. 1992), holding that *Sure-Tan* prohibits awards of back pay to undocumented workers under the NLRA. However, in his dissent, Judge

Cudahy noted that the Supreme Court's reference to employees being "lawfully entitled to be present and employed in the United States," was a quote from the decision that he wrote for the Circuit in *Sure-Tan*, and that he was referring to workers who were not in the country and could not legally return. *Id.* at 1123-24. Moreover, the Seventh Circuit explicitly declined to decide whether the same rule would apply to Title VII. *Id.* at 1122 n.7. That rule should not apply to Title VII, the ADA, or the ADEA because part of the court's rationale was that "the award provisions of the NLRA are remedial, not punitive, in nature." *Id.* at 1119. In contrast, Title VII, the ADA, and the ADEA provide for punitive damages (ADEA liquidated damages are punitive in nature), and back pay under those statutes serves not only a remedial, but also a deterrent function. *See Albemarle Paper Co. v. Moody,* 422 U.S. at 418-19, 421.

The Commission is persuaded that Judge Cudahy's dissent and the decisions of the Second and Ninth Circuit are more soundly reasoned and more consistent with the language and purposes of the employment discrimination laws.

30. *Sure-Tan,* 467 U.S. at 900-01.

31. *See A.P.R.A.,* 134 F.3d at 54, citing *Local 512,* 795 F.2d 705, 717 (9th Cir. 1986) (emphasis added).

32. This conclusion is supported by IRCA's legislative history. The report of the House Education and Labor Committee on IRCA stated, *inter alia*, the following:

> [t]he committee does not intend that any provision of this Act would limit the powers of State or Federal labor standards agencies such as the . . . Equal Employment Opportunity Commission . . . to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by these agencies. To do otherwise would be counter-productive of our intent to limit the hiring of undocumented employees and the depressing effect on working conditions caused by their employment.

H.R. Rep. No. 99-682(II), 99th Cong., 2d Sess. 8-9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5757, 5758. *See also A.P.R.A.*, 134 F.3d at 56 n.3.

33. *McKennon,* 513 U.S. at 357.

34. Following the dictate of *Sure-Tan,* a monetary award should not induce illegal reentry. Thus, if the worker's location is known, the monetary award should be sent to him/her.

35. An offer of reinstatement must comport with the standards set forth in *EEOC v. Ford Motor Co.*, 458 U.S. 219 (1982).

36. *See EEOC Enforcement Guidance: After Acquired Evidence,* 8 FEP Manual 405:7331, 7335 (Dec. 14, 1995).

37. *See* Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k); Section 16(b) of the FLSA (EPA), 29 U.S.C. § 216(b); Section 7(b) of the ADEA, 29 U.S.C. § 626(b); and Section 505 of the ADA, 42 U.S.C. § 12206.

38. *See* Sections 706(g)(2)(B)(i) and (ii) of Title VII, 42 U.S.C. §§ 2000e-5(g)(2)(B)(i),(ii).

39. *See* Section 703(m) of Title VII, 42 U.S.C. § 2000e-2(m) (liability is established when the complaining party proves that a prohibited factor motivated the adverse action, even though other factors also motivated the action).

40. *See McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 361-62 (1995) (the fact that the employer could have terminated the employee for misconduct is irrelevant to liability if the employer was not motivated by such misconduct; only the remedy is affected). *See also EEOC Enforcement Guidance: After-Acquired Evidence*, 8 FEP Manual 405:7331 (Dec. 14, 1995).

41. Section 706(g)(2)(B)(ii) of Title VII, 42 U.S.C. § 2000e-5(g)(2)(B)(ii).

42. *McKennon,* 513 U.S. at 360 (if employer can prove that it would have terminated the employee when it learned of specific misconduct, it need not reinstate her and the back pay period will end on the date that the employer discovered the evidence).

43. *See EEOC Enforcement Guidance: After-Acquired Evidence,* 8 FEP Manual 405:7331, 7333-37 (Dec. 14, 1995) (explaining effect of after-acquired evidence on back pay and damages).



*This page was last modified on October 26, 1999.*

*The U.S. Equal Employment Opportunity Commission*

# Questions & Answers

# Enforcement Guidance on Remedies Available to Undocumented Workers Under Federal Employment Discrimination Laws

This guidance explains the availability of remedies under Title VII, the Age Discrimination in Employment Act, the Americans With Disabilities Act and the Equal Pay Act where an employer has unlawfully discriminated against undocumented workers. The guidance supersedes "Policy Guidance: Effect of the Immigration Reform and Control Act on the Remedies Available to Undocumented Aliens Under Title VII," N-915.040 (April 26, 1989).

Q. Are undocumented workers protected under the federal anti-discrimination laws?

A: Yes. The federal employment discrimination laws protect all employees in this country, including those who are not authorized to work.

Q: Doesn't this create a conflict with the immigration laws which prohibit employers from employing unauthorized workers?

A: No. In fact, enforcing the civil rights laws on behalf of all workers supports the enforcement of the immigration laws, principally the Immigration Reform and Control Act (IRCA). If employers were not held responsible for discriminating against unauthorized workers, it would create an incentive for unscrupulous employers to employ and exploit these workers. This would directly undermine the enforcement of the immigration laws by encouraging the employment of unauthorized workers. It would also harm authorized workers who might be denied these jobs or be subjected to a workplace which tolerated discrimination.

Q. Why did the Commission change its position from the 1989 Policy Guidance?

A. In 1989, the Commission concluded that, because IRCA prohibited employers from employing undocumented workers hired after November 6, 1986, such workers were not entitled to reinstatement or to back pay for the period when they

had not worked because of a discriminatory failure to hire or termination. Such workers were, however, entitled to back pay for any periods in which they were working for the employer but were discriminatorily underpaid.

Legal developments since 1989 persuaded the Commission that its position regarding back pay was no longer correct. In addition, the Commission determined that it was important to address other important legal developments regarding remedies. In particular:

- The Second Circuit Court of Appeals affirmed a decision of the National Labor Relations Board (NLRB v. A.P.R.A. Fuel Oil Group) that unauthorized workers are eligible for back pay under the National Labor Relations Act (NLRA) and that back pay should only be cut off after the worker leaves the country and is not eligible to return. The court also stressed that imposing monetary penalties on employers who violated the law best served the goals of the NLRA and was fully consistent with the goals of the immigration laws. The Commission concluded that because Title VII's back pay provision was modeled on the NLRA, the same analysis should apply.

- Congress enacted the Civil Rights Act of 1991, which

    - provided that Title VII is violated when a prohibited factor motivated the employer's action, even if other, lawful factors - such as unauthorized immigration status - also motivated the action; and

    - provided for compensatory and punitive damages under Title VII and the ADA based on Congress' finding that damages are necessary to both compensate victims of discrimination and to deter future violations.

- The Supreme Court's decision in McKennon v. Nashville Banner Publishing Co. made clear that an employer is responsible for its discriminatory actions -- even if, after the action, the employer discovers information that would have justified the action on other, nondiscriminatory grounds. Under McKennon, an employer's discovery that a worker is undocumented will not protect it from liability for a discriminatory action it previously took with regard to that worker.

Q. What remedies are available under the laws enforced by the Commission?

A. The basic remedies available under these laws are reinstatement if the employee was unlawfully terminated, instatement if the employee was discriminatorily denied a job, backpay, other appropriate injunctive relief, damages, and attorneys' fees.

20

Q: Are undocumented workers entitled to the same remedies available to all other workers for violations of the laws enforced by the Commission?

A. Yes, except for the very limited situation where the award would conflict with the purposes of immigration laws.

Q. How might an award conflict with the purposes of immigration laws?

A. An award that encourages employers to knowingly employ unauthorized workers, or that encourages workers to illegally reenter the country, would conflict with the immigration laws. Otherwise, awards that compensate employees for unlawful discrimination will further the purposes of both the civil rights and the immigration laws.

Q. What are the limitations on relief for unauthorized workers?

A. The following narrow limitations apply:

- An unauthorized worker is not eligible for back pay for the period after the unauthorized worker leaves the country and is not legally eligible to return.

- If an employer knows that a worker who was hired after November 6, 1986 is unauthorized, reinstatement of that worker can be conditioned on the worker being able to satisfy IRCA's verification requirements within a reasonable period of time.

  - This condition does not apply to workers who were employed by the employer on or before November 6, 1986, because IRCA does not require employers to seek work authorization documents from those workers.

These exceptions do not apply to workers who have been discriminatorily underpaid while employed, harassed, not promoted, or otherwise discriminated against in the terms and conditions of employment. They are entitled to full back pay and appropriate damages. In all other circumstances, unauthorized workers are entitled to the same remedies to which all other workers are entitled.

Q: Do other limitations on remedies apply to unauthorized workers?

A: Generally applicable limitations on the availability of certain remedies apply equally to unauthorized workers as all other workers. In "mixed motive" cases, if an employer can show it would have taken the same action against the worker even absent the discrimination, the employer is not required to reinstate the employee or pay back pay or damages. In "after-acquired evidence" cases, if, after the employer takes a discriminatory action against an employee, the employer learns that the employee has engaged in wrongdoing for which the employer

would have taken the same action, remedies may be limited. In both mixed motive and after-acquired evidence cases, however, the employer remains fully liable for the wrongdoing.

Q. Are unauthorized workers protected by the retaliation principles of the federal antidiscrimination laws?

A. Yes. Such workers are particularly vulnerable to threats to report them to the INS or other forms of retaliation and EEOC takes the concern of retaliation very seriously.

- It is unlawful to threaten to report, or to report a worker to INS because a worker opposed unlawful discrimination or participated in a proceeding under the anti-discrimination laws.

- Where the employer appears to have acquired information about a worker's unauthorized status after that worker complained of discrimination, the Commission will investigate whether the information was acquired through a retaliatory investigation.

If an unauthorized worker is retaliated against, that worker is entitled to damages without regard to his or her work status.

*This page was last modified on October 26, 1999.*